66278. ALGHITA et al. v. UNIVERSAL INVESTMENT & MANUFACTURING COMPANY.

McMURRAY, Presiding Judge.

On June 21, 1982, an agreement to transfer and reacquire stock of "Universal Investment & Manufacturing Co." (hereinafter referred to as "UIMCO") was executed by Heavy Machines Company, Inc. (Adnan Alghita, president). The agreement was referred to as being one between Alghita and UIMCO, but Alghita did not sign same except as president of Heavy Machines Company, Inc. (hereinafter referred to as "HMC, Inc."). The President of UIMCO, Hisham Araim, executed the agreement for this corporation. Simultaneously therewith, in consideration of the mutual covenants, UIMCO and HMC, Inc. executed an option agreement whereby UIMCO would sell to HMC, Inc., as purchaser, the various listed properties, provided the option was exercised. As to these properties and with particular reference to certain lots at Lake Lanier, Forsyth County, Georgia, the seller was given the option of selecting one of the lots and exempting it from the option provided it (UIMCO) gave written notice of such choice "ninety days from the

date of this option or shall be deemed waived." On July 29, 1982, Hisham Araim signed a letter as president (on the letterhead of "Intercontinental Services, Inc." and not UIMCO), advising Adnan Alghita (in care of his attorney and not addressing him as president of HMC, Inc.) that he was exercising the option to select lot 4 of Lake Lanier property to be excluded from the option agreement and same "may not be purchased under the Option Agreement." The Lake Lanier property option agreement also had a proviso that in the event of the execution of the option of purchase that if the seller "has sold or signed a contract for the sale of any parcel or portion of such property [Lake Lanier], the property sold or under contract shall not be subject to this option and the purchase price for the remaining property shall be reduced in a pro rata fashion."

A letter dated August 6, 1982 (certified mail, return receipt requested) from Adnan Alghita's attorney addressed to "Mr. Hisham Araim, Universal Investment and Manufacturing Company" advised that Alghita was giving notice to exercise his right to option and purchase lot number 3 of the Lake Lanier property, and transfer the property to himself (Alghita). A check was enclosed drawn upon the attorney's trust account for the sum of down payment believed required and providing further that the transaction would be closed prior to the December deadline, the notice for closing calculations and place to be given later. In a letter dated August 10, 1982 (certified mail, return receipt requested), the secretary of UIMCO replied to the letter from Mr. Alghita's attorney (shown above) proposing to exercise the option to purchase lot 3 of the Lake Lanier property, advising that Mr. Araim, president of UIMCO, was out of the country and that the letter did not properly exercise the option granted to HMC, Inc. by UIMCO but was defective in the following respects: (1) not accompanied by either cash, certified check or a bond and the earnest money payment from the attorney's trust account did not satisfy the requirements of Paragraph 5 of the agreement which required "cash or certified check or . . . a bond . . ."; (2) the right to purchase was granted by UIMCO to HMC, Inc. and not to Adnan Alghita, individually, and Paragraph 14 of the agreement clearly states that the purchaser "may not assign or transfer this Agreement, or any interest of Purchaser hereunder, without the prior written consent of Seller"; and (3) the letter fails to specify a time and place for closing as required by the option agreement in that the agreement requires closing to take place not less than five nor more than fifty days from the date of notice. In addition, however, the letter further stated that UIMCO could not accept the purported notice to purchase because the lot Alghita sought to purchase was involved in a sales contract as to that lot and two other lots, calling attention to the

564

fact "that in the event at the execution of the option, seller has signed a contract for the sale of any portion of such property, the property under contract shall not be subject to this option." We note here that with reference to the proposed sale of lot 3 (along with two other lots) UIMCO produced evidence that on August 5, 1982, UIMCO was negotiating for the sale of the above lots to Andrea Felker. On August 9, 1982, a contract was presented by Felker which was therein revised and executed by and between Felker and UIMCO, signed by its secretary on behalf of UIMCO. UIMCO also produced evidence that even though Mr. Araim (President) was out of the country at the time of the execution of the contract, the directors and stockholders had previously agreed to accept a contract on the property and the secretary was directed to execute it on behalf of UIMCO.

In a letter dated August 11, 1982 (certified mail, return receipt requested), Adnan Alghita's attorney replied by forwarding certified funds and advising the date of closing and time (as suitable, in Atlanta, Georgia, or alternative locations), and further that he (attorney) had difficulty believing that there had been a potential contract on the referenced property, demanding a copy of the contract at once, if in fact, there was such a contract in existence. In answer to that letter, in a letter dated August 12, 1982 (certified mail, return receipt requested), UIMCO, by and through its secretary, replied that Mr. Alghita, individually, could not exercise the option which was granted by UIMCO to HMC, Inc., and in further clarification of the record, the specific lot 3, along with two other lots, was under contract, closing to take place no later than October 8, 1982, refusing the tender, and returning the "cashier's check." The letter also advised that UIMCO was under no obligation to furnish him (attorney) a copy of the signed contract and since Mr. Araim, the president, was out of the country, she, the secretary, did not feel that she should voluntarily supply counsel with a copy of said contract. Again, in a letter dated August 13, 1982 (certified mail, return receipt requested), Mr. Alghita's attorney advised that Mr. Alghita's name was used synonymously with HMC, Inc., had signed individually, as well as HMC, Inc. and again tendered the certified check setting a date of closing and time as required and advising that he (attorney) did not accept the statement of the alleged contract, if in fact there was one, as counsel wished to see it. The letter also advised that if the tender of the option is not acknowledged, appropriate legal steps would be taken to file an action and a lis pendens on the property.

Thereafter, "Adnan Alghita, Heavy Machines Company, Inc.," as plaintiff, brought an action in two counts against UIMCO setting forth, in substance, the above facts attaching the various letters as exhibits. In Count 1 plaintiff contends the defendant had acted in

bad faith in the refusal of the tenders, causing plaintiff unnecessary trouble and expense and sought specific performance, including damages, expenses of litigation and attorney fees; and in the alternative for judgment for $60,000 if specific performance is not granted. In Count 2 plaintiff alleges fraud and deceit on the part of the defendant, seeking general and exemplary damages arising out of the deceit (fraudulent and willful misrepresentation), and because of defendant's bad faith and fraudulent statement with reference to the purported sale of lot 3 the defendant had caused plaintiff unnecessary expense.

UIMCO, as defendant, answered, admitting jurisdiction and service, the agreement to transfer and reacquire stock attached to plaintiff's complaint as Exhibit "A," the terms of the agreement including the option with reference to the sale of real property. However, it denied that plaintiff had given written notice of intention to exercise the option as to lot 3 of the Lake Lanier property, any bad faith in the transaction, the alleged fraud and deceit, but admitted, however, receipt of the various letters shown above.

Thereafter, plaintiff "Adnan Alghita, Heavy Machines Company, Inc." obtained leave of the court to amend plaintiff's complaint adding a third count based upon written notice of an intention to exercise the option to purchase, in addition, lot 4 Lake Lanier property based upon a letter dated September 21, 1982, and the refusal and rejection in a letter dated September 23, 1982, received on or about September 28, 1982, as a breach of the agreement, again seeking specific performance as to that particular lot. The defendant responded by denying this claim, admitting, however, certain averments and receipt of the letter and its response thereto.

Whereupon, UIMCO moved for summary judgment based upon certain pleadings and affidavits whereby it contends that it had received the Felker request for the purchase of certain lots (including lot 3) of the Lake Lanier property owned by the defendant; that the directors and shareholders had agreed to the sale for a gross sum on August 6, 1982, and had instructed the secretary to execute a contract of sale which was executed by the secretary on behalf of the corporation on August 9, 1982; and, that subsequent to the execution of the contract on August 9, 1982, the first letter dated August 6, 1982, from Adnan Alghita's counsel "purporting to be a notice to exercise an option" on Alghita's behalf was received on that date, August 9, 1982. The affidavit of the purchaser Felker likewise was offered in support of the motion for summary judgment confirming most of the above facts. The sales contract itself, dated "8-9-82," was also attached to the affidavits.

The motion for summary judgment came on for a hearing, and summary judgment was granted to the defendant. However, this order was amended to grant same only as to Counts 1 and 2 of the plaintiff's complaint. Plaintiff appeals. *Held:*

We are concerned here only with Counts 1 and 2 of the petition with reference to the alleged exercise of the option as to the purchase of lot 3 of the Lake Lanier property, the trial court having amended its final order granting summary judgment only as to these two counts. Count 3, with reference to lot 4 of the Lake Lanier property, is only incidentally involved.

Counsel for both parties by brief argue at great length with reference to the question of whether or not the option agreement should be strictly construed with reference to the requirements as to the exercise of the option to purchase. However, we deem it unnecessary to become involved with the issues as to whether or not the failure of the plaintiff (1) to accompany the exercise of the option by either cash, certified check or bond with reference to the earnest money, (2) the exercise of the option was not by the proper party (HMC, Inc.), and (3) the letter failed to specify the proper time and place for closing within the period of time set forth in the agreement, all as grounds for a refusal to accept the exercise of the option for purchase. Our examination of the evidence and the admissions in the pleadings with reference to the various letters by and between the parties discloses that a sales contract was entered into by and between a third party and the defendant on August 9, 1982; and only after the execution of that contract was the first letter from plaintiff's counsel dated August 6, 1982, received with reference to the prospective notice to exercise the option. This fact has not been refuted by the plaintiff. While the letter dated August 6, 1982, shows that it was by certified mail with return receipt requested, no evidence has been produced here showing when it was delivered to the defendant other than defendant's evidence that it was received subsequent to the execution of the contract of sale by and between UIMCO and a third party. Accordingly, the language found in the option agreement, that is, Exhibit A to the agreement, with reference to the Lake Lanier property, that in the event at the execution of the option if the seller has already sold or signed a contract for the sale of any parcel or portion of such property, "the property sold or under contract shall not be subject to this option" becomes effective. Under the unrefuted facts lot 3 being a part of the contract of sale by and between the defendant and a third party, it was no longer subject to the option at the time the purchaser attempted to exercise same whether or not that attempt was proper. When a motion for summary judgment is submitted and supported by evidence, the adverse party

may not rest his case as made but must set forth specific facts and present his case in full in order to show there is a genuine issue for trial. See OCGA § 9-11-56 (e) (formerly Code Ann. § 81A-156 (Ga. L. 1966, pp. 609, 660; 1967, pp. 226, 238; 1975, pp. 757, 759)). *Morton v. Stewart,* 153 Ga. App. 636, 643 (266 SE2d 230); *Summer-Minter & Assoc. v. Giordano,* 231 Ga. 601, 604 (203 SE2d 173); *Alterman Foods v. Ligon,* 246 Ga. 620, 625 (272 SE2d 327). The plaintiff having produced no evidence which would conflict with the positive testimony offered by the defendant that the letter seeking to exercise the option of purchase was received after a sales contract had been entered with a third party, this eliminates the necessity for a trial by jury even giving the opposing party the benefit of all reasonable doubts and all favorable inferences that could have been drawn from the plaintiff's evidence. No genuine issue of material fact remains as to lot 3, and the moving party is entitled to judgment as a matter of law. See *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442); *MacGrath v. Hoffman,* 156 Ga. App. 240 (274 SE2d 631); *Crutcher v. Crawford Land Co.,* 220 Ga. 298, 303-304 (138 SE2d 580).

*Judgment affirmed. Shulman, C. J., and Birdsong, J., concur.*

DECIDED JULY 15, 1983 —
REHEARING DENIED JULY 26, 1983.

*Alfred F. Brunetti,* for appellants.
*James A. Eidson, E. A. Simpson, Jr.,* for appellee.