76102. VIRGIL v. KAPPLIN.
(369 SE2d 808)

BANKE, Presiding Judge.

The appellee, Irving J. Kapplin, sued the appellant, James L. Virgil, to recover on three unpaid promissory notes. The trial court

granted summary judgment to Kapplin, and this appeal followed.

Kapplin was part owner of and leasing agent for the Westgate Shopping Center, while Virgil was president of R. M. V. Enterprises, Inc., a lessee of the shopping center. In May and June of 1980, Kapplin allegedly made certain loans to R. M. V. and to Virgil personally totalling $63,500, to permit certain leasehold improvements to be made to additional shopping center space that R. M. V. intended to occupy. Each of the first two of these loans was for $30,000 and was evidenced by a promissory note in that amount, undisputedly signed by Virgil solely in his representative capacity as follows: "R. M. V. ENTERPRISES, INC., /s/ James L. Virgil, Pres. (SEAL)." However, on the reverse side of both of these notes appeared the following typewritten statement, also purportedly signed by Virgil: "I, James L. Virgil, do hereby personally guarantee the payment of this note for R. M. V. Enterprises, Inc." The third promissory note was in the amount of $3,500 and contained no reference to R. M. V. Enterprises. It was signed by Virgil as follows: "James Virgil Pers. (SEAL)." *Held*:

1. While Virgil admits having signed the two $30,000 instruments in his capacity as president of R. M. V. Enterprises, he asserts that a factual question remains as to whether he signed the guarantees appearing on the reverse sides. Kapplin averred by affidavit that he had insisted on Virgil's personal guarantee as a condition to extending the loans to the corporation and that Virgil had executed both of the guarantees in his presence. Kapplin's testimony that Virgil signed the reverse sides of the notes was supported by the affidavit of an expert to the effect that the signatures on the front and reverse sides of the two notes had been executed by the same person.

Although Virgil initially testified in his deposition that he was "not sure" whether the signatures on the reverse sides of the notes were his, he ultimately testified that, to the best of his knowledge, they were not. In an affidavit later submitted in opposition to Kapplin's motion for summary judgment, Virgil flatly stated that he did not sign "the guarantees sued upon." In addition, he produced expert opinion testimony to the effect that the signatures appearing on the reverse sides of the documents had been placed there prior to the placement of the typewritten signature lines. As Virgil's testimony on this issue cannot be construed as contradictory, we apply the general rule, expressed in *Burnette Ford, Inc. v. Hayes*, 227 Ga. 551 (181 SE2d 866) (1971), that on motion for summary judgment all evidence is to be construed against the movant. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 29-30 (343 SE2d 680) (1986). Accordingly, we conclude that a genuine issue of fact remains as to whether Virgil signed the guarantees sued upon, and we consequently reverse the grant of summary judgment against him with respect to the two cor-

porate notes. See generally *Alghita v. Universal Investment &c. Co.*, 167 Ga. App. 562 (307 SE2d 99) (1983).

2. Virgil further asserts that, even assuming he signed the reverse sides of the two $30,000 notes, a factual issue would remain as to the effect of the signatures, based on the evidence that the guarantee language was typed on the instruments *after* the signatures. We find this contention to be without merit. "Unless the instrument clearly indicates that a signature is made in some other capacity it is an indorsement." OCGA § 11-3-402. "Unless the indorsement otherwise specifies (as by such words as 'without recourse') every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser who takes it up, even though the indorser who takes it up was not obligated to do so." OCGA § 11-3-414 (1).

3. Virgil further contends that if he guaranteed the corporate notes, the guarantees are unenforceable due to lack of consideration. This contention is also without merit. "The contract of suretyship or guaranty is one whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety *or in consideration of credit . . . given to his principal. . . .*" OCGA § 10-7-1 (emphasis supplied). See generally *Beard v. McDowell*, 174 Ga. App. 793, 795 (331 SE2d 104) (1985). It is undisputed that credit was extended to the corporate principal.

4. The appellee's claim is not barred by the doctrine of laches. "The equitable doctrine of laches is not applicable to suits at law. . . . [E]ven if the doctrine of laches could be invoked in a suit at law, it could not be invoked during the period during which a statute of limitation would be applicable." *Columbus Bank &c. Co. v. Dempsey*, 120 Ga. App. 5, 6 (169 SE2d 349) (1969). The notes in question were executed in 1980 and were under seal. Actions to enforce instruments under seal may be brought within 20 years after the right of action has accrued. See OCGA § 9-3-23.

5. Virgil asserts that a factual question remains as to whether the parties reached an accord and satisfaction with respect to the indebtedness represented by the notes. This contention is premised on statements contained in Virgil's deposition and in a counter-affidavit which he submitted in opposition to Kapplin's summary judgment motion to the effect that a settlement of the claim had been reached as part of the settlement of litigation between himself and a subsequent owner of the shopping center. These conclusory statements clearly do not tend to establish that an accord and satisfaction was reached by the parties to the present litigation. See generally OCGA § 13-4-101. Accordingly, we find this enumeration of error to be without merit.

6. With regard to the $3,500 note, Virgil asserts that he intended the notation next to his signature to read "Pres." rather than "Pers.," so as to indicate that he was also signing that note solely in his representative capacity as president of R. M. V. Enterprises. We find this contention to be totally without merit. The plain and unambiguous language of the note reflects that it was executed by Virgil in his individual capacity, for it contained no reference whatsoever to the corporation. We accordingly affirm the grant of summary judgment as to that instrument.

*Judgment affirmed in part and reversed in part. Birdsong, C. J., and Beasley, J., concur.*

DECIDED MAY 19, 1988.

*William G. Quinn III*, for appellant.
*Bernard M. Gerber*, for appellee.