## 77702. KORNEGAY v. MUNDY et al.
## 77703. ANCHOR SAVINGS BANK v. MUNDY et al.
(379 SE2d 14)

CARLEY, Chief Judge.

Appellee-plaintiffs Mr. and Mrs. James Mundy filed suit against appellant-defendants H. Street Kornegay and Anchor Savings Bank (Anchor). The complaint alleged that Kornegay had, with the full knowledge of his employer, Anchor, intentionally inflicted emotional distress upon Mrs. Mundy and that he had also tortiously interfered with her business relations. Mrs. Mundy sought to recover damages for the alleged torts and Mr. Mundy sought to recover for the loss of his wife's consortium. Appellees answered, denying the material allegations of appellants' complaint.

Following extensive discovery, appellants moved for summary judgment. After a hearing, the trial court denied the motions, but certified its orders for immediate review. Pursuant to our grant of their applications for interlocutory appeal, Kornegay appeals from the denial of his motion for summary judgment in Case No. 77702 and Anchor appeals from the trial court's denial of its motion for summary judgment in Case No. 77703.

### Case No. 77702

1. Kornegay enumerates as error the trial court's denial of his motion for summary judgment, urging that no genuine issue of material fact remains as to his liability.

The evidence of record shows that both Mrs. Mundy and Kornegay were, at the times relevant to this appeal, employees of Anchor. Mrs. Mundy was employed as the manager of an Anchor branch bank in Hapeville. Kornegay was employed as an Anchor public relations officer. Neither had direct managerial or supervisory authority over the other. In denying the motion for summary judgment, the trial court found that the following alleged incidents would authorize a jury to find that Kornegay had intentionally inflicted emotional distress upon Mrs. Mundy and that he had tortiously interfered with her business relations: "1) Several comments made by Kornegay in the presence of others to the effect that he was not sure of what color her hair was, and that he had known her when it was black. 2) Kornegay asked [Mrs.] Mundy's age and when she refused, he asked her husband what was her age. 3) The Mundys maintained a boat at a marina at Lake Jackson where Kornegay owns a home. [Mrs.] Mundy's discomfort around Kornegay caused her to sell her boat. 4) Kornegay allegedly interfered with bank operations by walking behind the teller lines over [Mrs.] Mundy's objections. 5) Kornegay allegedly tampered with the wheels on [Mrs.] Mundy's chair causing her to fall to the

floor when she sat down. 6) Kornegay allegedly plundered through [Mrs.] Mundy's purse, desk and office and removed files and records from her office. 7) Kornegay allegedly interrupted [Mrs.] Mundy over an eight-month period while [Mrs.] Mundy was consulting with customers about their problems. 8) Kornegay allegedly interfered with the performance of bank tellers in violation of Anchor's policy. 9) Kornegay alleged that [Mrs.] Mundy was responsible for an employee by the name of Tom Sawyer being fired at the Hapeville Anchor Branch. 10) Kornegay stated that 'no woman was capable of managing the Hapeville branch office.' 11) Kornegay allegedly showed account balances to persons other than the owner of the account. 12) Kornegay allegedly violated the Safety Deposit Box policies by allowing access to safety deposit boxes by non-owners of the boxes and allegedly destroyed safe deposit signature cards. 13) Kornegay allegedly approved share loan rates at other than the regulated interest rate charged, issued illegal share notes, cashed certificates early without penalty and allowed loans to be collateralized by property other than that of the obligor. 14) Kornegay allegedly swept objects off [Mrs.] Mundy's desk to the floor while she was on the telephone."

By way of response to at least two of these alleged incidents, Numbers 5 and 6, Kornegay offered his sworn denial of any involvement. No one witnessed these acts and appellees failed to offer any evidence to support their allegations other than their mere *suspicion* that Kornegay was involved. Once the pleadings have been pierced, the plaintiff may not rest upon his complaint but must come forward with "his case in full in order to show there is a genuine issue for trial. [Cits.]" *Alghita v. Universal Investment & Mfg. Co.*, 167 Ga. App. 562, 567 (307 SE2d 99) (1983). As to those two instances wherein the uncontradicted evidence shows that Kornegay was not involved, no genuine issue of fact remains and, accordingly, those instances should have been eliminated from consideration by the trial court as factual support for a tort claim against Kornegay.

The remaining instances of Kornegay's alleged tortious conduct, whether considered individually or collectively, do not, as a matter of law, rise to the requisite level of egregious or outrageous behavior which justifiably results in that severe fright, humiliation, embarrassment, or outrage which no reasonable person is expected to endure. See *Sossenko v. Michelin Tire Corp.*, 172 Ga. App. 771, 773 (324 SE2d 593) (1984). See also *Moses v. Prudential Ins. Co. of America*, 187 Ga. App. 222 (369 SE2d 541) (1988); *Carruth v. Roberts*, 189 Ga. App. 247 (375 SE2d 499) (1988). Alleged tasteless and rude social conduct on the part of Kornegay—such as commenting on Mrs. Mundy's age and hair color, interrupting her conversations or knocking objects from her desk—is not actionable. " '[T]he liability [for intentional infliction of emotional distress] clearly does not extend to mere insults,

indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of . . . filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.' " (Emphasis omitted.) *Moses v. Prudential Ins. Co. of America*, supra at 225. Likewise, Kornegay's allegedly disruptive and questionable professional conduct directed toward others—such as interfering with Anchor's bank tellers, and violating Anchor's safety deposit and loan policies—may give rise to justifiable concern on the part of the parties who were directly affected, but such conduct would not afford Mrs. Mundy a viable basis for claiming that she herself was justifiably frightened, humiliated, embarrassed, or outraged. Construing the evidence most strongly against Kornegay, there was an internal power struggle between himself and another Anchor employee as to how the Hapeville branch would be managed. Although Mrs. Mundy held the title of manager, Kornegay insisted on questioning and challenging her authority and ability. An employee's ongoing frustration in the work place, born of a personality conflict with a co-employee, does not give rise to an action for intentional infliction of emotional distress. Such a conflict between employees is a matter to be resolved by the mutual employer. It should not be litigated in a court of law.

The alleged acts were also insufficient, as a matter of law, to support an action against Mr. Kornegay for the tortious interference with Mrs. Mundy's business relationship with Anchor. See generally *West Va. Glass Specialty Co. v. Guice & Walshe, Inc.*, 170 Ga. App. 556, 557 (1) (317 SE2d 592) (1984); *Henson v. American Family Corp.*, 171 Ga. App. 724, 729 (4) (321 SE2d 205) (1984); *Sacks v. McCrory*, 160 Ga. App. 430 (1) (287 SE2d 292) (1981).

For the reasons stated, the trial court erred in denying summary judgment in favor of Mr. Kornegay.

### Case No. 77703

2. Anchor enumerates as error the trial court's denial of its motion for summary judgment.

The only basis for a recovery against Anchor would be Anchor's vicarious liability for the tortious actions of Kornegay as its employee. Where the liability of a party is premised solely upon his vicarious liability for the tortious actions of an agent and judgment is entered for the agent, the party alleged to be vicariously liable is also entitled to judgment. See *Duke Trucking Co. v. Giles*, 185 Ga. App. 833, 835 (2) (366 SE2d 216) (1988); *Hughes v. Newell*, 152 Ga. App. 618, 623

(4) (263 SE2d 505) (1979). Accordingly, our holding in Division 1 mandates the reversal of the trial court's denial of Anchor's motion for summary judgment.

*Judgments reversed. Deen, P. J., and Sognier, J., concur.*

DECIDED FEBRUARY 22, 1989.

*Long, Weinberg, Ansley & Wheeler, Robert G. Tanner,* for appellant (case no. 77702).

*Webb, Carlock, Copeland, Semler & Stair, Wayne D. McGrew III, Wade K. Copeland,* for appellant (case no. 77703).

*Meals, Kirwan, Goger, Winter & Parks, David R. Bundrick, James T. Perry,* for appellees.