Victor A. BUTE, Jr., Plaintiff,

v.

SCHULLER INTERNATIONAL INCORPORATED, Defendant.

Civil Action No. 1:96–CV–1021–WBH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 27, 1998.

---

Michael Steven Webb, Webb & Webb, Duluth, GA, for Victor A. Bute, Jr.

Donald B. Harden, Kenneth James Barr, Fisher & Phillips, Atlanta, GA, for Schuller Intern. Inc.

### ORDER

HUNT, District Judge.

Plaintiff brings this action asserting claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and for intentional infliction of emotional distress under Georgia law. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. Before the Court is defendant's motion for summary judgment [11].

## I. BACKGROUND

Plaintiff Victor A. Bute, Jr. has been employed by defendant Schuller International Incorporated [1] ("Schuller") since November 1982. At all times relevant to this litigation,

---

1. When plaintiff first began his employment with the company, it was known as Manville Corporation.

plaintiff was employed as a Machine Attendant at Schuller's Winder, Georgia plant. As a Machine Attendant, plaintiff was sometimes required to lift objects that weighed more than fifty pounds.

On December 24, 1990, plaintiff injured his back in the course of his employment. Despite the injury, plaintiff continued to work at the plant until October 22, 1991, at which time he had corrective surgery. On April 6, 1992, plaintiff returned to work on restricted light duty for thirty days. Three months later, plaintiff's surgeon, Dr. Michael Hartman, released him to return to work without restriction. However, plaintiff was unable to work without experiencing back pain. Accordingly, he went on medical leave.

By April 1993, Dr. Hartman had released plaintiff to return to work on a trial basis, provided that he was not required to lift more than fifty pounds over his head. Around this time, plaintiff received an independent medical evaluation from Dr. Arnold, who also concluded that plaintiff should be restricted from lifting in excess of fifty pounds. Plaintiff then consulted with Dr. Garey Huff, the plant physician for defendant's Winder, Georgia plant, who was also serving as plaintiff's personal physician and his worker's compensation physician. Based on plaintiff's representation that he was ready to return to work, Dr. Huff released plaintiff to return to work without restrictions. However, because defendant believed that plaintiff would be required to lift in excess of fifty pounds if he returned to work, it did not allow him to do so, in light of the opinions expressed by Dr. Hartman and Dr. Arnold.

Plaintiff continued to strive towards returning to work, and was next evaluated by Dr. Hartman on April 28, 1994. Based on this evaluation, Hartman again concluded that plaintiff could return to work if he was not required to lift in excess of fifty pounds. In July 1994, George Casper, the employee relations specialist at defendant's Winder, Georgia plant, contacted Dr. Huff regarding the unrestricted release Dr. Huff had provid-

ed to plaintiff. Casper informed Dr. Huff that as part of the normal required duties of a Machine Attendant, plaintiff would at times be required to lift over fifty pounds. Dr. Huff responded that plaintiff was not capable of performing that type of work and withdrew the unrestricted release.

Finally, after participating in several "work hardening" programs, plaintiff underwent a functional capacity evaluation in June 1995 that reflected that he could fully perform all of the duties of a Machine Attendant. The following month, he returned to his position and has remained so employed since that time. However, plaintiff maintains that he should have been permitted to return to his position in May 1993, when he received Dr. Huff's full release. Accordingly, he now seeks back pay for the period from May 22, 1993 through July 17, 1995.

## II. DISCUSSION

Defendant contends that it is entitled to summary judgment on all of plaintiff's claims. Under Federal Rule of Civil Procedure 56, a court shall grant a motion for summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where the nonmoving party bears the burden of proof at trial, the moving party must demonstrate to the Court that "there is an absence of evidence to support the nonmoving party's case," *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), or must put forth affirmative evidence negating an element of the nonmoving party's case, *Fitzpatrick v. Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993). It is then the responsibility of the nonmoving party, by revealing evidence outside of the pleadings, to show that evidence supporting its case does exist or that the element sought to be negated remains a genuine issue of material fact to be tried. *Id.* Essentially, this requires the nonmoving party to come forward with evidence sufficient to withstand a directed verdict on this issue at trial. *Id.* at 1116–17.

The nonmoving party is not required to carry its burden of proof at the summary judgment stage. In analyzing the case, the Court views the facts in the light most favorable to the nonmoving party and makes all factual inferences in favor of that party. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 918 (11th Cir.1993). "The court must avoid weighing conflicting evidence or making credibility determinations." *Id.* at 919. "Where a reasonable fact finder may 'draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment.'" *Id.* (quoting *Barfield v. Brierton,* 883 F.2d 923, 933–34 (11th Cir.1989)).

**A. Plaintiff's Claim of Disability Discrimination Under the ADA**

■ In order to make out a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that: (1) he is "disabled," as that term is defined under the ADA; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he was subjected to unlawful discrimination as the result of his disability. *Harris v. H & W Contracting Co.,* 102 F.3d 516, 519 (11th Cir.1996). Defendant maintains that plaintiff has failed to satisfy any of these elements.

With respect to the first element of the prima facie case, defendant has cited several cases in which courts have found that a plaintiff's back injury or back condition did not constitute a disability under the ADA. *See Rakestraw v. Carpenter Co.,* 898 F.Supp. 386, 389–90 (N.D.Miss.1995) (back injury that was ultimately corrected by surgery did not constitute disability); *Hutchinson v. United Parcel Serv., Inc.,* 883 F.Supp. 379, 395–96 (N.D.Iowa 1995) (plaintiff who suffered shoulder and back injuries not disabled within meaning of ADA despite finding that injuries were not minor and resulted in slight permanent impairment); *Quinley v. State Farm Ins. Corp.,* No. 95–0271–RV–C, 1996 WL 544258 (S.D.Ala. June 26, 1996) (inability

to perform heavy lifting because of back condition did not constitute a disability under the ADA); *Weaver v. Florida Power & Light,* No. 95–8519–CIV–RYSKAMP, 1996 WL 479117 (S.D.Fla. July 16, 1996) (lifting restrictions resulting from back injury did not constitute disability under the ADA). The Court finds these authorities persuasive.

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of having such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The ADA does not define such terms as "physical or mental impairment," "major life activity," or "substantially limits." Instead, these definitions are found in the regulations Congress directed the EEOC to issue to facilitate the implementation of the statute.

Under the EEOC regulations, "physical impairment" is defined as

[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1). The regulations also provide that "Major Life Activities mean functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Finally, the regulations define the phrase "substantially limits" as

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

■ In determining whether an individual is "substantially limited" in a major life activ-

ity, courts are specifically instructed to consider the nature and severity of the impairment, the duration of the impairment, and the permanent or long term impact resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). Here, there is no doubt that plaintiff's injury required frequent medical attention and was likely quite painful. Nonetheless, plaintiff's surgery ultimately enabled him to return to his position as a Machine Attendant, without any restrictions. This fact strongly supports a conclusion that, regardless of whether plaintiff's condition limited his major life activities, such limitation was not "substantial." *See Rakestraw*, 898 F.Supp. at 390.

Furthermore, plaintiff has failed to articulate which of his major life activities were substantially limited by his back condition. The Court notes, however, that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Here, plaintiff complains only that he was not permitted to return to his position as a Machine Attendant during the time in which he was restricted from lifting in excess of fifty pounds. Plaintiff concedes, however, that defendant offered to retrain plaintiff for another position. Accordingly, the Court finds that plaintiff has failed to demonstrate that he was "substantially limited" in the major life activity of working.

█ Nonetheless, the conclusion that plaintiff was not substantially limited in a major life activity does not preclude plaintiff from establishing a prima facie case of disability discrimination. As noted above, the ADA prohibits discrimination against persons who, though not disabled, are regarded as being disabled. However, plaintiff's argument that defendant regarded him as having a disability is unavailing.

█ The fact that defendant regarded plaintiff as unable to perform the duties of a Machine Attendant because his back injury precluded him from lifting heavy objects

does not compel the conclusion that defendant regarded plaintiff as "disabled." Where "defendant's recognition of plaintiff's limitations was not an erroneous perception, but instead was a recognition of a fact called to defendant's attention by plaintiff's own physician," a finding that plaintiff was regarded as disabled and, therefore, entitled to the protections of the ADA is inappropriate. *McCollough v. Atlanta Beverage Co.*, 929 F.Supp. 1489, 1498 (N.D.Ga.1996). Here, any limitations placed on plaintiff's employment were based on the lifting restrictions imposed on plaintiff by three different physicians. Although plaintiff makes much of the fact that Dr. Huff cleared plaintiff to return to work with no restrictions in May 1993, Dr. Huff states in his affidavit that at that time he was not aware that Machine Attendants were required to lift in excess of fifty pounds. Affidavit of Garey Huff at ¶ 5. As soon as Dr. Huff was so informed, he withdrew the unrestricted release. *Id.* at ¶ 7. Plaintiff has not offered any evidence to refute this testimony. Accordingly, the Court finds that plaintiff was not "regarded as having a disability" within the meaning of the ADA.

Because the Court finds that plaintiff has failed to satisfy the first element of a prima facie case of disability discrimination under the ADA, it need not address the remaining two elements. Defendant's motion for summary judgment is GRANTED with respect to this claim.

**B. Plaintiff's Claim of Retaliation Under the ADA**

Plaintiff's complaint includes an allegation that "defendant retaliated against [plaintiff] for engaging in protected activities," in violation of the ADA. Complaint at ¶ 20. In its motion for summary judgment, defendant argues that plaintiff is not entitled to pursue this claim in this action because he failed to file a charge with the EEOC concerning this alleged retaliation. Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned. Accordingly, defendant's motion for summary judgment is GRANTED with respect to this claim.

### C. Plaintiff's Claim for Intentional Infliction of Emotional Distress

In addition to his claims under the ADA, plaintiff also asserts a claim under Georgia law for intentional infliction of emotional distress. Defendant offers two arguments in support of its motion for summary judgment on this claim.

■ First, defendant contends that this claim is preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The Court need not address this argument, however, because it agrees with defendant that, as a matter of law, plaintiff cannot make out a claim for intentional infliction of emotional distress under Georgia law.

■ In order to recover for intentional infliction of emotional distress under Georgia law, a plaintiff must prove (1) that the defendant engaged in intentional or reckless conduct; (2) that the conduct was extreme or outrageous; (3) that there is a causal connection between the wrongful conduct and plaintiff's emotional distress; and (4) that plaintiff's emotional distress is severe. *Yarbray v. Southern Bell Telephone & Telegraph Co.,* 261 Ga. 703, 706, 409 S.E.2d 835 (1991). Whether a claim rises to the requisite level of outrageousness and egregiousness is a question of law to be determined by the Court. *Id.*

■ While the existence of an employer-employee relationship may make otherwise nonegregious conduct outrageous, *Trimble v. Circuit City Stores, Inc.,* 220 Ga.App. 498, 499, 469 S.E.2d 776 (1996), the conduct of which plaintiff complains does not rise to the level traditionally required by Georgia courts to support a claim of intentional infliction of emotional distress, even in an employment context. *Cf. Sossenko v. Michelin Tire Corp.,* 172 Ga.App. 771, 324 S.E.2d 593 (1984) (affirming grant of summary judgment in favor of defendant where claim was based on incidents involving threats to plaintiff's life and future employment with defendant made by plaintiff's supervisors).

Liability for intentional infliction of emotional distress has only been imposed "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Norfolk Southern Ry. Co. v. Spence,* 210 Ga.App. 284, 285, 435 S.E.2d 680, 681 (1993). The conduct of which plaintiff complains in this action-defendant's refusal to allow him to return to work following back surgery-simply does not embody that level of egregious or outrageous behavior which "justifiably results in that severe fright, humiliation, embarrassment, or outrage which no reasonable person is expected to endure." *Kornegay v. Mundy,* 190 Ga.App. 433, 434, 379 S.E.2d 14 (1989) (internal citations omitted). Consequently, defendant's motion for summary judgment is GRANTED with respect to this claim.

## III. CONCLUSION

For the aforementioned reasons, defendant's motion for summary judgment [11] is GRANTED. The Clerk of the Court is DIRECTED to enter judgment against plaintiff and in favor of defendant, and to close this case.

## JUDGMENT

This action having come before the court, Honorable Willis B. Hunt, Jr., United States District Judge, for consideration of defendant's motion for summary judgment, and the court having granted said motion, it is

**Ordered and Adjudged** that the plaintiff take nothing; that the defendant recover its costs of this action, and the action be, and the same hereby, is dismissed.