**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 8, 2015**

# In the Court of Appeals of Georgia

A15A0284. GAUSE et al. v. FIDELITY BANK.

MILLER, Judge.

This case arises from William L. Gause and Gause Construction Company, Inc's (collectively "Defendants") default on a promissory note and unconditional guaranty. Fidelity Bank, the holder of the note and guaranty, sued the Defendants for breach of the note and guaranty. Defendants counterclaimed for, inter alia, set-off and recoupment. The trial court subsequently granted summary judgment to Fidelity, and the Defendants appeal, contending that (1) the trial court erred in granting summary judgment to Fidelity on the guaranty and note, (2) the trial court erred in granting summary judgment to Fidelity on the Defendants' counterclaims for set-off and recoupment, and (3) the trial court abused its discretion in considering and relying on

certain deposition testimony. For the reasons that follow, we affirm in part and reverse in part.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a [grant or] denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations and footnote omitted.) *GEICO Gen. Ins. Co. v. Wright*, 299 Ga. App. 280, 281 (682 SE2d 369) (2009).

So viewed, the evidence shows that Gause obtained a $1.1 million loan from Fidelity's predecessor in interest, Securities Exchange Bank ("SEB")[1] on August 11, 2008, for the purchase of 25 lots in a subdivision.[2] The loan was evidenced by a contemporaneous promissory note signed by Gause (hereinafter the "Note"). That same day, as part of the security for the loan, Gause signed an unconditional guaranty of the note on behalf of Gause Construction (hereinafter the "Guaranty"), as well as

---

[1] After SEB failed and went into receivership, Fidelity purchased SEB's assets from the FDIC.

[2] In connection with the loan, Gause also signed a waiver of rights to notice and hearing in the event of default.

2

a corporate resolution authorizing him to execute the Guaranty and a corporate W-9 form.[3] On April 28, 2010, Gause renewed the Note for a two-year term in the principal amount of $1,100,900. Gause and Gause Construction admittedly failed to pay the Note in full by the due date, April 28, 2012.

1. The Defendants contend that the trial court erred in granting summary judgment to Fidelity on the Note and Guaranty. We agree in part.

(a) Gause's Breach of the Note

"A promissory note is an unconditional contract whereby the maker engages that he will pay the instrument according to its tenor. . . . The note being an unconditional promise, the contract is complete as written[.]" (Citations and punctuation omitted.) *Devin Lamplighter, Ltd. v. American Gen. Finance*, 206 Ga. App. 747, 749 (2) (426 SE2d 645) (1992).

> A plaintiff seeking to enforce a promissory note establishes a prima facie case by producing the note and showing that it was executed. Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense.

---

[3] The loan security also included a security deed on the 25 lots and an assignment of rents and leases.

(Footnote omitted) *Core LaVista, LLC v. Cumming*, 308 Ga. App. 791, 795 (1) (b) (709 SE2d 336) (2011).

Defendants argue that a question of fact remains regarding mutual assent to the Guaranty and, therefore, the trial court erred in finding that the Note is a separate, independent and enforceable contract. Contrary to Defendants' argument, a

> guaranty, whether entered into on the same or another instrument as that of the original obligation, whether executed at the same or a different time, and whether or not purporting to be the separate obligation of the signer . . . is a separate [and enforceable] contract[.]

(Citations omitted.) *Bearden v. Ebcap Supply Co.*, 108 Ga. App. 375 (133 SE2d 62) (1963); see also OCGA § 10-7-1 (defining guaranty contract and providing that principal remains bound for its debt regardless of whether guaranty is given in consideration for benefit flowing to guarantor or for benefit given to principal). Fidelity established a prima facie case by producing the Note; the undisputed evidence showed that the Note was duly executed and was admittedly in default; and Defendants failed to establish a defense to enforcement of the Note. Accordingly, the trial court properly determined that Fidelity was entitled to summary judgment on its claim for breach of the Note.

(b) Gause Construction's Breach of the Guaranty

In a suit on a guaranty, production of the instrument entitles the holder to recover on it when the signature is admitted or established and the defendant does not establish a defense. See *L. D. F. Family Farm, Inc. v. Charterbank*, 326 Ga. App. 361, 363 (756 SE2d 593) (2014).

Here, Fidelity produced the contemporaneous Guaranty which identifies Gause Construction as the guarantor. The Guaranty is incorporated into the Note; the Guaranty provides that it was given in consideration of the Note and other financial accommodations made by Fidelity which are of direct interest and benefit to Gause Construction as the guarantor; and the Guaranty provides that Gause Construction "unconditionally guarantees the full and prompt payment" of the Note when due. Moreover, the closing attorney, who prepared the loan documents, including the Note and Guaranty, testified in his deposition that the Guaranty was prepared under his supervision at SEB's direction and that Gause signed the Guaranty at the loan closing.

Defendants nevertheless argue that a question of fact remains regarding mutual assent to the Guaranty. Specifically, Defendants argue that they have disputed the authenticity and validity of the Guaranty from the beginning of this case, and argue that the page bearing Gause's genuine signature on the Guaranty was attached

without his knowledge or consent. In their defense, Defendants point to Gause's testimony.

Gause initially deposed that he did not recall executing that instrument. In his subsequent affidavit, Gause averred that,

> Since my deposition, I have carefully examined the copy of the purported August 11, 2008 Guaranty Agreement handed to me and attached to Fidelity Bank's Complaint. I am certain that I did not execute the Guaranty. While it does appear to bear my signature on the last page, I believe the signature page may have [sic] come from another document and [was] attached to give the appearance that I signed it.

As the nonmoving party to Fidelity's summary judgment motion, the Defendants were not required to present conclusive proof that Gause's signature was invalid. *Lee v. Suntrust Bank*, 314 Ga. App. 63, 65 (722 SE2d 470) (2012). Rather, Defendants only had to point to evidence giving rise to a triable issue of material fact, which they did by submitting Gause's affidavit averring that he did not sign the Guaranty. Id.

Notwithstanding considerable evidence in the record to the contrary, including the closing attorney's testimony, we are constrained to conclude that Gause's affidavit testimony stating that he did not execute the Guaranty is sufficient to create

6

a genuine issue of fact with regard to the enforceability of that instrument. See *Virgil v. Kapplin*, 187 Ga. App. 206, 207 (1) (369 SE2d 808) (1988) (guarantor's affidavit stating that he did not sign guarantees at issue raised genuine issue of fact); *Lee*, supra, 314 Ga. App. at 65 (affidavit denying validity of signature created factual dispute for trial).[4] Accordingly, we reverse the grant of summary judgment to Fidelity on its claim for breach of the Guaranty.

2. Defendants contend that the trial court erred in granting summary judgment on the Defendants's counterclaims for setoff and recoupment. We do not agree.

> Under Georgia law, a set-off . . . allows the defendant to set off a debt owed him by the plaintiff against the claim of the plaintiff. A recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages because the plaintiff has not complied with the cross-obligations or independent covenants arising under the contract being sued upon.

---

[4] Since Gause initially deposed that he *did not remember* signing the Guaranty, his affidavit testimony stating that he *certainly did not sign* the Guaranty cannot be construed as contradictory, and we must construe his affidavit testimony in the light most favorable to him as the non-movant. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28-30 (1) (343 SE2d 680) (1986); *Virgil*, supra, 187 Ga. App. at 207 (1).

7

(Footnotes omitted.) *Automated Print v. Edgar*, 288 Ga. App. 326, 330 (2) (654 SE2d 413) (2007). The Defendants argue that they are entitled to setoff and recoupment based on $200,000 in loans to SEB which Gause made between December 30, 2008 and January 2, 2009. Gause's own deposition testimony, however, shows that the loans in question were made to a separate and distinct entity, SEB Bancorp, Inc., and not to Fidelity's predecessor in interest, SEB. Accordingly, the trial court did not err in granting summary judgment to Fidelity on the Defendants's counterclaims for set-off and recoupment.

3. Defendants contend that the trial court erred in considering the closing attorney's deposition testimony. We discern no error.

The record belies Defendants' argument that they were unaware that Fidelity intended to take the closing attorney's deposition. Notably, the record shows that, more than a week prior to taking the deposition, Fidelity served Defendants with a copy of the subpoena requiring the closing attorney to appear for his deposition, as well as the notice of the deposition, and Fidelity filed these documents with the trial court the day after such service. Moreover, Defendants admitted at the hearing in this case that they had notice of the closing attorney's deposition, but did not participate in or attend the deposition.

Defendants also argue that the trial court erred in failing to strike the closing attorney's deposition from the record because it was taken after the close of formal discovery in this case. "A trial court has wide discretion to shorten, extend, or reopen the time for discovery, and its decision will not be reversed unless a clear abuse of that discretion is shown." (Citations omitted.) *Woelper v. Piedmont Cotton Mills*, 266 Ga. 472, 473 (1) (467 SE2d 517) (1996). Defendants have not shown that the trial court abused its discretion in failing to strike the closing attorney's deposition testimony.

*Judgment affirmed in part and reversed in part. Andrews, P. J., concurs. Branch, J., concurs in judgment only as to Division 1 (b) and concurs fully as to Divisions 1 (a), 2 and 3.*