A97A0167. STEDRY et al. v. SUMMIT NATIONAL BANK et al.
(489 SE2d 862)

MCMURRAY, Presiding Judge.

M. B. Fred Stedry and his closely held corporations, Investguard, Ltd. ("Investguard") and SOS Holdings, Inc. ("SOS"), brought this wrongful foreclosure action against Summit National Bank ("Summit"), successor of Vinings Bank & Trust, N.A. ("Vinings Bank"), and Andjar, Inc. ("Andjar") and Travelbank, Inc. ("Travelbank"), successive assignees of two promissory notes and accompanying security deeds from Investguard and SOS to Stedry ("the commercial paper") which Stedry pledged as collateral during several loan transactions with Vinings Bank. While Stedry's claim is based upon foreclosure of his interest in the commercial paper, Investguard's and SOS's claims are based upon foreclosure of their respective interests in realty encumbered by the commercial paper. Stedry alleged his interest in the commercial paper was wrongly foreclosed because Summit breached an oral promise — extended by Vinings Bank and confirmed by Summit — to refinance his debt via a five-year promissory note. Investguard and SOS contend their respective interests in the encumbered realty were wrongly foreclosed because the commercial paper was not subject to default. Stedry and Investguard alternatively claim that Summit, Andjar and Travelbank breached Vinings Bank's and Summit's agreements to reassign that part of the commercial paper encumbering Investguard's realty upon Stedry's reduction of his debt by $150,000.

Summit, Andjar and Travelbank denied liability and joined in filing a motion for summary judgment. The trial court granted this motion, finding that the Statute of Frauds and the parol evidence rule preclude admissibility of Vinings Bank's and Summit's alleged oral promises to refinance Stedry's debt via a five-year loan; that the Statute of Frauds and the parol evidence rule preclude evidence of Summit's alleged oral promise to reassign that part of the commercial paper encumbering Investguard's realty upon Stedry's reduction of his debt by $150,000; that Investguard and SOS were both in default for failing to pay Stedry according to the commercial paper's terms; and that Stedry did not reduce his debt by $150,000 so as to activate Vinings Bank's earlier written promise to reassign that part of the commercial paper encumbering Investguard's realty upon Stedry's reduction of his debt. We affirm because the law as well as the evidence, construed according to the standard prescribed by

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474), support the trial court's judgment.[1]

On May 9, 1988, Vinings Bank extended a $1,000,000 line of credit to Stedry for the purpose of funding or leveraging real estate loans. Vinings Bank loaned Stedry substantial sums under this line of credit, but Stedry could not keep up with his repayment obligation. So on November 30, 1991, Vinings Bank refinanced the debt with a $300,075 loan. The documents evidencing this transaction (a letter agreement and promissory note) provide that the loan will mature on January 7, 1992; that Stedry's failure to reduce his debt by $100,000 before December 20, 1991, will trigger another refinancing agreement on January 7, 1992; and that the terms of this refinancing agreement will be as follows: "You will agree to assign promissory notes and primary deeds to secure debt, duly recorded, on two of three pieces of property — Marietta Boulevard, Cherokee County and Douglas County. This note will have a maturity date of April 7, 1992. . . . Should a payment be made in an amount not less than $150,000, plus accrued interest during the time which this renewal is outstanding, Vinings Bank will agree to release one of the aforementioned properties."

Because Stedry did not reduce his debt by $100,000 before December 20, 1991, or satisfy his obligation to Vinings Bank by January 7, 1992, Vinings Bank refinanced Stedry's debt in accordance with the parties' November 30, 1991 letter agreement and promissory note. To this end, Stedry executed a $300,075 promissory note (maturing on April 7, 1992) and a collateral assignment agreement in favor of Vinings Bank, pledging his interest in the commercial paper — which included Stedry's interests (as obligee and grantee) under a promissory note and security deed encumbering Investguard's Douglasville property and a promissory note and security deed encumbering SOS's Marietta Boulevard property.

When Stedry failed to satisfy the January 7, 1992 promissory note when it matured on April 7, 1992, the parties renegotiated the debt and entered into another loan transaction on July 30, 1992. This debt was also secured by assignment of Stedry's interests in the commercial paper and is evidenced by a $275,075 promissory note with a maturity date of September 30, 1992. But unlike the parties' January 7, 1992 refinancing agreement, this loan transaction does not contemplate reassignment of any part of the commercial paper in the

---

[1] Summary judgment is appropriate when the court, viewing all the evidence and drawing all reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491, supra. We extend the following statement of facts based on this perspective.

event Stedry reduces his debt by $150,000. With regard to security, this new promissory note provides as follows: "SECURITY: I give to you a security interest in the . . . assigned Promissory Note and DSD to M. B. Fred Stedry from Investguard, LTD. dated 12/4/90 in the amount of $315,000.00 [and the] assigned Promissory Note and DSD to M. B. Fred Stedry from SOS Holdings, LTD. dated 4/2/91 in the amount of $235,000.00."

Stedry failed to satisfy his obligation when the July 30, 1992 promissory note matured on September 30, 1992, and Vinings Bank again renewed Stedry's debt. This transaction is evidenced by a $250,175 promissory note, dated November 24, 1992, requiring Stedry to tender interest payments "from time to time" and principal reduction payments of $25,000 on December 1, 1992; $37,500 on March 1, 1993, June 1, 1993, September 1, 1993, December 1, 1993, and March 1, 1994; and $37,675 on June 1, 1994. This promissory note also calls for assignment of Stedry's interests in the commercial paper via the following provision: "SECURITY: I give you a security interest in the . . . assigned Promissory Note and DSD to M. B. Fred Stedry from Investguard, Ltd. dated 12/4/90 in the amount of $315,000.00 [and the] assigned Promissory Note and DSD to M. B. Fred Stedry from SOS Holdings, Ltd. dated 4/2/91 in the amount of $235,000.00." With regard to Stedry's obligation to preserve this collateral, the promissory note provides as follows: "Your security interest in the [commercial paper] is ahead of the claims of any other creditor, and I will do whatever you require to protect your interest. . . . If I have given you a security interest in my accounts, I will not settle any account for less than its full value without your written permission. . . . I will collect all accounts until you tell me otherwise."

After Stedry failed to make the required $37,500 principal payment when it came due on June 1, 1993, he once again began negotiating with Vinings Bank to refinance his debt with "a new note for not more than $150,000 to amortize the loan over five years." And because his debt was reduced by $150,000, Stedry also asked Vinings Bank to reassign that part of the commercial paper encumbering Investguard's Douglasville property. According to Stedry, Vinings Bank's Senior Vice President, B. Keith Daniel, agreed to these terms and also "agreed that before the documentation was ready [Stedry] would be paying interest on the balance of the [November 24, 1992 promissory] note."[2] Although Stedry paid interest according to the

---

[2] This oral agreement is hotly disputed. Vinings Bank's view of the understanding is reflected in a letter from B. Keith Daniel to Stedry, dated September 14, 1993. This letter provides as follows: "In accordance with previously documented correspondence, Vinings Bank & Trust N.A. will release its security interest in either the SOS Holdings, Inc. Promissory Note or the Investguard, Ltd. Promissory Note as it is your intent to procure a cash sale

terms of the parties' November 24, 1992 loan agreement, Stedry admitted (during his deposition) that his last principal payment under this promissory note was in August 1993.

Because Vinings Bank was sold to Summit on December 31, 1993, before documents evidencing the parties' oral refinancing agreement were executed or prepared, Stedry met with Summit's Chief Executive Officer, David Yu, to complete the deal. Stedry thereafter posted a letter, dated January 27, 1994, to David Yu providing as follows: "As we agreed with Vinings Bank and as confirmed by you, you will release our Douglasville property and prepare a new promissory note amortizing my loan over a 5-year period. As you suggested, your attorneys will prepare a customized note." In response, Summit forwarded a promissory note to Stedry granting Stedry a five-year renewal loan but not reassigning any part of the commercial paper. Stedry did not execute this promissory note. Instead, he returned the promissory note to Summit with suggested changes. Summit did not respond to these changes.

In April 1994, Summit commenced foreclosure proceedings against Stedry, Investguard and SOS. The foreclosure proceedings against Investguard and SOS were based on the corporations' alleged failure to pay their respective obligations under the commercial paper. Stedry claimed, however, that Investguard and SOS were not in default because he unilaterally renewed the corporations' obligations under the commercial paper, extending the commercial paper's maturity dates to December 31, 1994.

Summit assigned the commercial paper to Andjar before the foreclosure proceedings were complete, and Andjar assigned the commercial paper to Travelbank. Travelbank foreclosed Investguard's and SOS's respective interests in the Douglasville and Marietta Street properties, under authority of the commercial paper, in October 1994. *Held*:

1. Georgia's Statute of Frauds requires a signed writing for "[a]ny commitment to lend money." OCGA § 13-5-30 (7). Stedry, Investguard and SOS, nonetheless, urge that this subsection's reference to a "commitment" refers to oral promises to lend "new" money, not oral promises to refinance existing debts such as the oral promise allegedly extended by Vinings and confirmed by Summit in the case

---

for either or both properties securing these notes in order to retire your indebtedness owed to Vinings Bank & Trust N.A." Stedry's view of the understanding is reflected in his letter to B. Keith Daniel, dated November 24, 1993. This letter provides as follows: "Reference is made to our recent conversations regarding the release of [Investguard's] Douglasville property and restructuring the payments of my loan with your bank. I trust that you will be able to have all the documents, such as release, new note providing for the amortization over a 5-year period with *no penalty for prepayment*, ready for signatures before Christmas. . . . I will pay again the interest by December 1st."

sub judice. We cannot graft such an interpretation on OCGA § 13-5-30 (7)'s clear and unambiguous terms. Courts should construe a statute to give logical and intelligent effect to all of its provisions and refrain from construing the statute in a way that tends to render it meaningless. See *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays*, 266 Ga. 393, 399 (3) (467 SE2d 875).

Stedry, Investguard and SOS next assert that Stedry's payment of interest while he was waiting for Vinings Bank and Summit to refinance his debt removed Vinings Bank's alleged oral promise (as purportedly confirmed by Summit) from the Statute of Frauds. We do not agree. " 'In order to remove the alleged oral contract from the Statute of Frauds "(t)he part performance shown must be consistent with the presence of a contract and inconsistent with the lack of a contract." (Cit.)' *Katz v. Custom Spray Products*, 168 Ga. App. 451, 452 (309 SE2d 663) (1983)." *Studdard v. George D. Warthen Bank*, 207 Ga. App. 80 (1) (427 SE2d 58). Although Stedry's payment of interest in the case sub judice may be consistent with Vinings Bank's alleged oral promise to refinance his debt (as purportedly confirmed by Summit), it was not inconsistent with Stedry's obligation to pay interest according to the terms of the November 24, 1992 promissory note. Since this promissory note required Stedry to make separate interest payments "from time to time" until his debt was retired on June 1, 1994, evidence that Stedry made interest payments through September 1994 does not invoke part performance or promissory estoppel as an exception to OCGA § 13-5-30 (7). See *Ikemiya v. Shibamoto America*, 213 Ga. App. 271, 272 (1), 273 (444 SE2d 351).

The trial court did not err in concluding that the Statute of Frauds precludes evidence of Vinings Bank's alleged oral promise — as purportedly confirmed by Summit — to refinance Stedry's debt over a five-year period. Likewise, the trial court did not err in concluding that the Statute of Frauds precludes evidence of Summit's alleged oral promise to reassign that part of the commercial paper encumbering Investguard's realty upon Stedry's reduction of his debt by $150,000.[3]

2. Our holding in Division 1 renders it unnecessary to review the trial court's application of the parol evidence rule.

3. Investguard and SOS contend their respective interests in the

---

[3] Citing OCGA § 24-3-36, Stedry, Investguard and SOS urge under this enumeration of error that Summit cannot deny existence of its obligation to refinance his debt and release Investguard's Douglasville property because Summit's CEO, David Yu, did not respond to Stedry's January 27, 1994 letter setting out the terms of the parties' oral understanding. This assertion is not supported by the record. It is undisputed that Summit responded to Stedry's January 27, 1994 letter by forwarding a promissory note to Stedry granting Stedry a five-year renewal loan but not reassigning any part of the commercial paper to Stedry. Summit therefore did not acquiesce to the terms of Stedry's January 27, 1994 letter.

collateral realty were wrongly foreclosed in October 1994 because Stedry extended the commercial paper's maturity dates to December 31, 1994. This assertion is without merit because the express terms of the November 24, 1992 promissory note — "I will collect all accounts until you tell me otherwise" — prohibited Stedry from extending the commercial paper's maturity dates or otherwise impairing the collateral. Moreover, "[w]hen collateral is duly assigned as security for a debt, the assignee creditor acquires the title to the collateral which the assignor debtor cannot abridge. *Darling Shop of Birmingham, Inc. v. Nelson Realty Co.*, 262 Ala. 495, 79 So.2d 793, 797 (Ala. 1954); *Travelers Insurance Co. v. Tallahassee Bank & Trust Co.*, 133 So.2d 463 (Fla. Ct. App. 1961); 6A C.J.S., *Assignments* § 82 (1975); see also *Wright v. Home Beneficial Life Insurance Co.*, 155 Ga. App. 241, 270 S.E.2d 400, 402 (1980). . . ." *F. W. Woolworth Co. v. Buford-Clairmont Co.*, 769 F2d 1548, 1554 (1985). Since it is undisputed, in the case sub judice, that the commercial paper matured, without payment, before the October 1994 foreclosure sale, the trial court did not err in granting Summit, Andjar and Travelbank's joint motion for summary judgment with regard to this aspect of Investguard's and SOS's wrongful foreclosure claims.

4. Since it is undisputed that Stedry did not reduce his debt by $150,000 before the January 7, 1992 promissory note matured, Stedry cannot rely on the accompanying collateral assignment agreement's provision that Vinings Bank would reassign that part of the commercial paper encumbering either SOS's or Investguard's realty upon Stedry's reduction of his debt by $150,000. This provision expired and was replaced by the July 30, 1992 promissory note which — unlike the January 7, 1992 loan transaction — did not contemplate reassignment of any part of the commercial paper in the event Stedry reduced his debt by $150,000.

The trial court did not err in granting Summit, Andjar and Travelbank's joint motion for summary judgment.

*Judgment affirmed. Smith and Ruffin, JJ., concur. Beasley, J., disqualified.*

DECIDED JULY 9, 1997 —
RECONSIDERATION DENIED JULY 24, 1997 — 

Brookins & Cook, O. Jackson Cook, for appellants.

Nelson, Mullins, Riley & Scarborough, Sylvia K. Kochler, John C. Amabile, Sabiston & Smith, Eric P. Sabiston, Charles A. Smith, for appellees.