**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2013**

# In the Court of Appeals of Georgia

A13A0038. McGEE et al. v. PATTERSON et al.

BRANCH, Judge.

Willie and Audrey McGee filed suit against the members of the board of directors of their homeowner's association alleging that the board members breached the association's declaration of covenants, breached their duty of good faith and fair dealing, and intentionally inflicted emotional distress on the McGees. The McGees, acting pro se at most times, sought damages, reimbursement of certain association assessments, attorney fees, and other relief. Following cross motions for summary judgment, the trial court entered a final order in which it denied the McGees' motion, granted the defendants' motion, ordered the McGees to pay unpaid assessments and late fees, and warned the McGees that if they filed any additional suits that "lack merit," they would be "punishable by the full contempt powers of [the] Court,

including the potential award of attorneys' fees." We hold that the trial court's order contains several errors of fact and law, which require us to reverse in part.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

Construed in favor of the McGees, the record shows that the McGees are homeowners in the Magnolia Estates Subdivision located in Fulton County. In April 2006, the subdivision's developer, Ross Mundy Custom Homes, Inc., ("Ross Mundy" or the "Declarant"), recorded a "Declaration of Protective Covenants" for Magnolia Estates (the "Covenants"), which became effective immediately and binding upon all homeowners. Section 5.2 of the Covenants provides that when 75 percent of the lots in the development had been conveyed to homeowners, the Magnolia Estates Homeowner's Association (the "MEHOA") would be formed. Although the record does not show when or even whether the 75 percent requirement was met or when the

MEHOA was formed, it is undisputed that it was formed by May or June 2008.[1] The initial board of directors was comprised of Anthony Holton, president; Connie Hill, vice president; Victoria White, secretary; and Gladys Kendricks, treasurer.

Under Article 6 of the Covenants, the MEHOA is authorized to assess the owners for the purpose of "promoting the health, safety, welfare, common benefit, and enjoyment of the Owners and the maintenance of the [common areas]." The Covenants provide that each lot owner is required to pay annual dues "to provide for the continued attractiveness of the Development and to provide for sufficient funding of the Homeowner's Association." The Covenants initially provided for assessments of $200 per year for each lot owner but granted the board authority to increase the assessments as necessary through the annual budgeting process.

In 2009, Mr. McGee, pro se, filed suit in Fulton County Magistrate Court against Hill, in her capacity as vice president of the MEHOA, alleging that she spent association funds without following the procedure required by the Covenants, refused

---

[1] Audrey McGee deposed that Ross Mundy went out of business in 2008. On June 6, 2008, Ross Mundy recorded a "Quitclaim Deed and Partial Release of Security Deed" and a "First Amendment to the Declaration," pursuant to which it deeded its rights to the common areas of the development to MEHOA and made amendments to the Covenants to terminate its (Ross Mundy's) authority to take certain actions under the Covenants.

to disclose association financial records, fraudulently used association funds for her personal use, and initiated a process to collect the 2009 assessment even though her term of office expired on December 31, 2008. Because the action included an allegation of fraud, it was transferred to superior court. It appears that Mr. McGee thereafter added Anthony Holton as a defendant. Mr. McGee filed a second lawsuit against Holton and Hill on June 3, 2009.

On June 20, 2009, board members Holton, Hill, and White, along with at least three members of the association and Audrey McGee, met to discuss the two pending suits against Holton and Hill. The board minutes state that the MEHOA would pay legal fees incurred by Holton and Hill in defense of the two suits. On July 27, 2009, via a check signed by Holton and Hill, the MEHOA paid the law firm of Bips and Bips $2,500 for legal fees incurred defending Holton and Hill in the suits filed by Mr. McGee.

Pamela Patterson became the president of the MEHOA for the year 2010, and, at the same time, Edward Quarles became an officer (either vice president or treasurer), appellant Audrey McGee became the secretary, and Maurice Scott became the member-at-large.

4

On April 12, 2010, one of Mr. McGee's suits against Holton and Hill was dismissed with prejudice by the trial court. (Mr. McGee dismissed the other suit with prejudice on May 13, 2010.) At a meeting of the new board on April 22, 2010, Patterson stated that the lawyers had advised her that the McGee litigation had been dropped, and she raised the issue of MEHOA paying the additional legal fees incurred by the former board members, Holton and Hill, since the time of the prior payment, but the issue was tabled at the request of some of those present. Another meeting was held two weeks later on the same topic, but it is unclear what transpired. Eventually Audrey McGee and Quarles resigned their board positions as a result of the conflict regarding the fees. They were succeeded by Gayle Holton as secretary and Kim Forbes as treasurer. The board made a second payment of attorney fees to Bips and Bips in late April 2010.

Patterson did not call for an election of new board members in the fall of 2010 as dictated by the Covenants.[2] But the board met on September 27, 2010, and, for the 2011 budget, decided to raise the annual assessment to $400 per year per homeowner because of mounting expenses. The board purchased director and officer liability

_____

[2] The Covenants require annual meetings "on approximately the 1st day of October, to re-elect officers who shall serve for one year." The McGees admit that all of the board members prior to the 2011 board were elected properly.

insurance on October 6, 2010. The board held a second meeting on October 16, 2010, at which the topic of increased assessments for 2011 was again raised. The board thereafter distributed a letter to the homeowners that included a copy of the proposed 2011 budget along with a revenue and expense report for 2010 (through October 15, 2010). The 2010 revenue and expense report showed a line item for payment of legal fees incurred by previous MEHOA board members. The proposed 2011 budget included an increase in assessments to $400 per lot and an allocation for the board to purchase insurance for the members of the MEHOA board.

In November 2010, the board recorded an amendment to the Covenants, which, among other things, provided for annual dues of $400. On January 5, 2011, the McGees recorded a document intended to strike the November amendment to the Covenants. In the spring of 2011, the board hired JWA Management to perform some services for the board, including legal services for responding to the McGees' attempt to strike the November amendment to the Covenants.

The McGees refused to pay the new assessment at the beginning of 2011 and have testified that they have no intention of paying. In April 2011, the board called a meeting of the homeowners and brought an armed security officer who approached

the McGees with his gun clearly visible. The McGees felt intimidated, and it appeared to them that the board's intent was to silence their opinion.

On June 15, 2011, the McGees filed the present action against Patterson, Gayle Holton, Forbes, and Scott; the McGees have twice amended their complaint.[3] In their second amended complaint, the McGees allege that the 2011 board was illegitimate because the board members failed to hold a valid election in the fall of 2010 to elect a new board; rather, the board members continued to hold the positions to which they had been elected for the year 2010. In addition, the McGees identified seven actions taken by the 2010 and 2011 boards that they allege were improper and caused them harm: (1) the 2010 board filed an invalid amendment to the Covenants in November 2010; (2) the "illegitimate" 2011 board had no authority to hire JWA Management to respond to the McGees' attempt to strike the invalid amendment; (3) the 2011 board lacked authority to raise the assessment from $200 to $400 without a proper meeting of the association or notice as required by the Covenants; (4) the 2011 board lacked authority to reimburse Mr. Holton and Hill for the legal fees incurred defending against Mr. McGee's two earlier suits; (5) the 2011 board lacked authority to purchase

_____

[3] Although the McGees verified their initial complaint, there are virtually no specific allegations of fact therein, and the amended complaints are not verified.

director and officer liability insurance; (6) the 2011 board lacked authority to hire a management company to maintain the day-to-day operations of the MEHOA; and (7) the 2010 board allowed the erection of an advertising sign in violation of Section 3.15 of the Covenants.[4] The McGees allege that these illegitimate actions taken by the 2010 and 2011 boards constitute a breach of contract, i.e., the Covenants. They further allege that by way of the same illegitimate actions, along with bringing an armed guard to a board meeting in 2011, the defendants breached their duty of good faith and fair dealing and intentionally inflicted emotional distress on the McGees. Finally, the McGees contend the defendants should be liable for the McGees' attorney fees.

The defendants, represented by an attorney, answered the complaint, but acting pro se, the defendants also filed counterclaims of libel, slander, and tortious interference with contractual or business relations. The trial court granted summary judgment in favor of the defendants on the plaintiffs' claims; the court's order is silent regarding the counterclaims. We find several errors in the trial court's order.

---

[4] The McGees do not challenge the trial court's ruling that their claim regarding an improper sign was moot given that the defendants had taken the sign down.

1. The McGees contend the trial court erred by concluding that because they have yet to pay the increased assessment, they "lack standing to bring the instant suit." We agree.

The appellees, in their appellate brief, and the trial court, in an order drafted by defense counsel, cite *Parker v. Clary Lakes Recreation Assoc.*, 272 Ga. 44 (526 SE2d 838) (2000), for the proposition that because the McGees have not paid the increased assessment, they lack standing to file this action.

We first find that appellees' citation to *Parker* is plainly misleading. In *Parker*, the plaintiff sought an interlocutory injunction to prevent the association from collecting or retaining amended assessments because they "were illegal under the bylaws and restrictive covenants." Id. at 44. Following a hearing, the trial court "expressed its intention to deny a preliminary injunction because [the plaintiff was] 'in bad standing. He hasn't paid any money, and he has no harm from this.'" Id. In affirming the trial court, the Supreme Court first cited the law that "a demonstration of irreparable injury *is not* an absolute prerequisite to interlocutory injunctive relief." (Citations omitted; emphasis supplied.) Id. at 45. The Supreme Court then concluded that the trial court did not err because it did not require a showing of irreparable harm; instead it properly balanced the absence of harm to the plaintiff and the potential harm

9

to the association that would arise from the grant of injunctive relief, as well as assessed the strength of the plaintiff's legal position. Id. Thus, the decision in *Parker* is inapposite and plainly does not support the conclusion that the McGees lacked standing because they had not paid the increased assessment.

Second, the Covenants themselves expressly provide that "the individual property owners of Lots in said subdivision shall have the right to enforce these Covenants." The right of the individual owners to enforce the Covenants is expressed repeatedly in the Covenants:

> This Declaration and the Restrictions contained herein shall [inure] to the benefit of and shall [be] enforceable by (a) The Declarant . . . ; and (b) the [MEHOA], and (c) The Architectural Control Committee, and (d) *each Owner*, his legal representative, heirs, successors, and assigns. . . .
>
> Nothing contained in these Covenants shall be deemed to affect or limit the right of . . . *any Owner* to enforce the restrictions by appropriate judicial proceedings or to recover damages. . . .
>
> Any violation of any of the Covenants herein set forth by a person, firm or corporation obligated to comply with the same, in such event, any person entitled to protection under these Covenants may proceed at law or in equity or in any court, either civil or criminal, to prevent a reoccurrence of said violation nor to recover damages for such violation.

10

(Emphasis supplied.) Accordingly, pursuant to the clear language of the Covenants, the McGees had standing to enforce the restrictive covenants. See, e.g., *Mack v. Armstrong*, 147 Wn. App. 522, 527-528 (6) (195 P3d 1027) (Wash.App. 2008) (covenants' plain language granted standing to any owner to enforce the covenants in law or equity); see also *Johnson v. Tlush*, 468 So2d 1023, 1025 (Fla.App. 1985) (construction of private dock abutting common area violated rights of association property owners, "giving them standing to enforce [association] covenants and restrictions imposed by the developer for the benefit of all"). For the above reasons, the trial court erred by holding that the McGees lacked standing.

2. The McGees contend the trial court erred when it found as a matter of fact that the MEHOA was governed by bylaws in addition to the Covenants. We agree. There is no evidence in the record to show that any bylaws were adopted by the MEHOA after it was formed, and Mrs. McGee averred that bylaws were never adopted. The only related evidence in the record is an unauthenticated and unrecorded copy of bylaws that predate the formation of the MEHOA that were attached as an exhibit to the defendants' brief in the trial court; as such, they are insufficient to support the trial court's finding. See generally *McRae v. Hogan*, 317 Ga. App. 813, 816 (a), n. 2 (732 SE2d 853) (2012) (rules for admissibility of evidence, including

11

rules for authentication of documents, apply in summary judgment proceedings). See also *Pruett v. Commercial Bank of Ga.*, 206 Ga. App. 103, 105 (424 SE2d 284) (1992) ("unsworn exhibits attached to trial briefs in support of the motions for summary judgment" are insufficient to establish undisputed facts).[5] The trial court therefore erred by determining as a matter of undisputed fact that the MEHOA was governed by bylaws in addition to the Covenants. Construing the evidence in the light most favorable to the McGees, there remains an issue of fact on this point.

3. The McGees contend the trial court erred by finding that their claim that the defendants failed to hold elections in the fall of 2010 for the 2011 board was without merit. There is an issue of fact on this issue.

The Covenants require annual meetings "on approximately the 1st day of October, to re-elect officers who shall serve for one year." Audrey McGee deposed that the fall 2010 elections were never held and that the board members' terms expired at the end of the year. The McGees contend that any action taken by the board after the board failed to hold elections in 2010 are invalid. The trial court held that

---

[5] We also find no evidence in the record that the MEHOA ever submitted itself to the terms of the Georgia Property Owners' Association Act, OCGA § 44-3-220 et seq. See OCGA § 44-3-222 ("Any declaration or amendment intending to bring or avail a development of the benefits and provisions of this article shall state an affirmative election to be so governed.").

regardless of whether elections were held, all of the defendants' subsequent actions were authorized by the Non-Profit Corporation Code of Georgia and that the defendants' inability to hold an election resulted from the McGees own conduct.

(a) The trial court relied on the purported bylaws to find as a matter of fact that the MEHOA was organized as a non-profit corporation under the Georgia Non-Profit Corporation Code, OCGA § 14-3-101, et seq. The court concluded that the failure of the board to hold the required elections was of no legal consequence because the board's actions were proper under OCGA § 14-3-805 (d).[6] But as shown in Division 2, an issue of fact remains regarding whether the MEHOA is governed by bylaws in addition to the Covenants. Consequently, the appellees have failed to place competent evidence in the record necessary to establish that the MEHOA is subject to the Georgia Non-Profit Corporation Code and § 14-3-805 (d) therein.

Improper elections or the failure to hold elections can strip the acting board members of their authority to act. See *Hall v. Town Creek Neighborhood Assn.*, 320 Ga. App. 897, 900 (740 SE2d 816) (where board was never appointed, "there was no body that had the authority to levy the assessments at issue"). Accordingly, based on

---

[6] OCGA § 14-3-805 (d) provides "Despite the expiration of a director's term, the director continues to serve until the director's successor is elected, designated, or appointed and qualifies, or until there is a decrease in the number of directors."

13

the record developed so far, the trial court erred by concluding that the board's failure to follow the procedure for electing new board members was of no possible legal consequence based on OCGA § 14-3-805 (d).

(b) The defendants claim, and the trial court held, that as a matter of undisputed fact the McGees' own actions thwarted the defendants' ability to hold an election because no member of the association was willing to serve. But the record shows that there is also an issue of fact on this issue. Mrs. McGee, who had been on the nominating committee in the past, specifically averred that she provided the board information about potential residents willing to serve on the board.

(c) Although the trial court erred on the 2011 election issue addressed in this Division, the effect of the error is limited by an admission by the McGees. The McGees state in their appellate brief that the 2010 board was properly elected, and Mrs. McGee deposed that the 2010 board was authorized to serve until December 31, 2010. It follows that the McGees concede that none of the actions taken by the 2010 board prior to December 31, 2010, are invalid as a result of the failure to hold elections for the 2011 board.

In sum, there remain issues of fact and law regarding the validity of the 2011 board and its actions subsequent to December 31, 2010.

4. The McGees contend that trial court erred by granting summary judgment on their breach of contract claim that the defendants improperly increased the assessment to $400 by failing to provide the McGees proper notice of the increase as required by the Covenants. There is an issue of fact on this issue.

(a) Section 6.3 of the Covenants authorizes the board to increase the assessments as necessary through the annual budgeting process, but that process requires the board to give notice to the homeowners of the new budget and assessment 30 days prior to the end of the fiscal year:

> Should an increase in the dues be necessary in the future, the Board of the Association shall prepare a budget covering the estimated costs of operating the Association for the coming year. . . . *The board shall deliver to each member a copy of the budget and a notice of assessment for the following year at least 30 days prior to the end of the Association's fiscal year.* The budget and the assessment shall become effective unless disapproved at a meeting by a majority of the Total Association Vote. If the membership disapproves the proposed budget *or the Board fails for any reason so to determine the budget* for the succeeding year, then and until such time as a budget shall have been determined *as provided herein*, the budget in effect for the then current year shall continue for the succeeding year.

(Emphasis supplied.)[7]

Under the rules of contract interpretation, this Court must attempt to give meaning to all provisions of the contract and look to "the whole contract ... in arriving at the construction of any part." OCGA § 13-2-2 (4); see *Horwitz v. Weil*, 275 Ga. 467, 468 (569 SE2d 515) (2002). First, the covenant provides that the board "shall" provide the requisite notice. In general, the use of the term "shall" indicates a command or a mandatory requirement. See generally *Cumrine v. IPG, Inc.*, 186 Ga. App. 384, 387 (1) (367 SE2d 581) (1988) (construing the word "shall" in a buy-sell agreement as a command); *Alimenta Processing Corp. v. South Georgia Pecan Co.*, 185 Ga. App. 330, 331 (364 SE2d 84) (1987) (construing the word "shall" in a lease agreement as "mandatory"). Moreover, the final clause of the covenant provides the remedy for failure. It states that if the board fails "for any reason *so to determine* the budget. . . then and until such time as a budget shall have been determined *as provided herein*, the budget in effect for the then current year shall continue for the succeeding year." The two highlighted phrases relate back to the entire procedure for establishing a new budget/increased assessment and thereby provide that a failure to follow the

---

[7] Should a homeowner fail to pay the assessment, he or she is subject to interest, late charges, and a lien upon their real property.

16

procedure, including providing the notice required to each member of the association, invalidates any attempted increase. Thus, construed as a whole, the covenant quoted above mandates that proper notice be given in order for the board to raise the assessment.

The McGees contend the association's fiscal year ended on September 30 and that they did not receive a copy of the budget and a notice of assessment for the following year at least 30 days prior the end of the 2010 fiscal year.[8] But there is an issue of fact regarding this assertion because neither party has introduced any evidence to establish the association's fiscal year – whether ending on September 30 or December 31, and we find none in the record. There is, therefore, an issue of fact as to whether the McGees received a timely copy of the 2011 budget and a notice of assessment as required by the Covenants in order for the MEHOA to raise the assessments.

(b) The issue of fact regarding notice of an increased assessment affects all actions that the board attempted to take as a part of the 2011 budget process but not

---

[8] The record shows that Board meetings were held on September 27, 2010 and on October 16, 2010, at which the board agreed to increase the assessments for 2011. Forbes, the board treasurer, averred that she sent the notice letter "following the October 16, 2010 meeting." The McGees admit that they received the notice 46 days after October 1, 2010, which would be more than 30 days prior to December 31.

17

those taken independently of that action by the 2010 board prior to December 31, 2010. The affected actions would obviously include the increase in assessment to $400. Because the issue has not been developed or addressed below, we leave it for the finder of fact to determine whether certain other board actions about which the McGees complain were a part of the 2011 budget process, such as the board's decision to indemnify past board members for legal fees, the board's decision to purchase director and officer insurance, the board's decision to hire JWA Management; and the board's decision to pay additional legal fees to defend against the McGees' attempt to strike an amendment to the Covenants.

5. The McGees assert that the trial court erred by granting summary judgment on their claim of a breach of good faith and fair dealing. The McGees' claim is based on the defendants' failure to give notice of the proposed 2011 budget as required by the Covenants.

"Every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement. . . . [B]ut the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability." (Citations and punctuation omitted.) *Myung Sung Presbyterian Church v. North American Assn. of Slavic Churches & Ministries*, 291

18

Ga. App. 808, 810 (2) (662 SE2d 745) (2008). Here, as already shown, the Covenants require the board to give notice at a certain time and there is an issue of fact regarding whether the McGees' received such notice in a timely manner. Because there is an issue of fact regarding breach of the specific provision of the Covenants for which the McGees allege breach of the duty of good faith and fair dealing, we reverse the grant of summary judgment on this ground as well. See *Layer v. Clipper Petroleum*, 319 Ga. App. 410, 419 (6) (735 SE2d 65) (2012).

6. The McGees' claim that the trial court erred by granting summary judgment on their claim of intentional infliction of emotional distress is without merit. The presence of an armed security guard at a meeting does not rise to the level of extreme and outrageous conduct required to support such a claim. See generally *Garcia v. Shaw Indus.*, 321 Ga. App. 48 (1) (b) (741 SE2d 285) ("a claim of intentional infliction of emotional distress requires a showing of 'extreme and outrageous conduct,' which means much more than malice") (punctuation and footnote omitted).

7. The McGees assert that the trial court erred by granting summary judgment on their claim that the individual defendants should have to reimburse the MEHOA for improper expenditures. The McGees argue that they filed this claim on behalf of all "the other homeowners and members of the MEHOA that are being affected by the

actions of the Defendants" and that any recovery should go back to the MEHOA. The McGees' claim fails because they "lack[ ] standing to assert those derivative claims without counsel as only a licensed attorney is authorized to represent a corporation in a proceeding in a court of record." (Footnote omitted.) *Leventhal v. Post Properties*, 276 Ga. App. 742, 745 (2) (624 SE2d 223) (2005).

8. The McGees assert that the trial court erred by granting summary judgment on their claim that they are entitled to attorney fees under OCGA § 13-6-11. They seek to recover the fees they incurred during the brief period of time they were represented by counsel.

First, for the McGees' claims for which we uphold summary judgment in favor of the appellees, the McGees' claim for attorney fees fails as a matter of law. See *Building Materials Wholesale v. Triad Drywall*, 287 Ga. App. 772, 777-778 (3) (653 SE2d 115) (2007).

For the remaining claims, we reverse the grant of summary judgment but only to a very limited extent. OCGA § 13-6-11 establishes three grounds for an award of fees: bad faith, stubborn litigiousness, and unnecessary trouble and expense:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been

20

stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

Because there is a bona fide controversy regarding the McGees' remaining claims, they cannot recover under OCGA § 13-6-11 on the ground that the defendants were stubbornly litigious or caused unnecessary trouble and expense during the litigation. See *David G. Brown, P.E. v. Kent*, 274 Ga. 849, 850 (561 SE2d 89) (2002).

The McGees could potentially recover fees under OCGA § 13-6-11 based on the defendants' actions in the underlying transaction. Id. For those claims we reverse summary judgment on the McGees' claim for attorney fees. "Only in the rare case where there was absolutely no evidence to support the award of expenses of litigation would the trial court be authorized to grant summary adjudication on such issues." (Citation omitted.) *American Medical Transport Group v. Glo-An, Inc.*, 235 Ga. App. 464, 467 (3) (509 SE2d 738) (1998), cited with approval in *Covington Square Assoc. v. Ingles Markets*, 287 Ga. 445, 447 (696 SE2d 649) (2010).

*Judgment affirmed in part and reversed in part, and case remanded. Phipps, C. J., and Ellington, P. J., concur*.