**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 21, 2013**

# In the Court of Appeals of Georgia

A13A1516. MYERS et al. v. FIRST CITIZENS BANK AND DO-078
  TRUST COMPANY, INC.

DOYLE, Presiding Judge.

First Citizens Bank & Trust Company, Inc. ("the Bank"), filed suit against Gary and Toni Myers seeking to recover on two promissory notes. The trial court granted summary judgment to the Bank, awarding judgment in specific amounts. The Myerses appeal, arguing that (1) the trial court erred by granting summary judgment to the Bank because the Bank failed to rebut their affirmative defense that the Bank negligently failed to comply with federal regulations regarding lending policies; and (2) the Bank failed to prove the amount due under the notes. For the reasons that follow, we affirm the grant of summary judgment as to liability, but vacate the judgment amount and remand the case for damage calculation.

A party is entitled to summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law. . . ."[1]

> On summary judgment, after the movant makes a prima facie showing of its entitlement to judgment as a matter of law, the burden then shifts to the respondent to come forward with rebuttal evidence. To do so, the respondent must set forth specific facts showing the existence of a genuine issue of disputed fact. On appeal from the grant or denial of a motion for summary judgment, we apply a de novo standard of review, viewing the evidence and all reasonable inferences and conclusions drawn from it in the light most favorable to . . . the nonmoving parties.[2]

So viewed, the record shows the Myerses purchased two lots in the Currahee Club subdivision in Stephens County in 2006. On April 24, 2009, they refinanced the original promissory notes by executing two new promissory notes in favor of the Bank, one in the amount of $140,938.47 and the other in the amount of $130,589.84.[3]

---

[1] OCGA § 9-11-56 (c).

[2] (Punctuation and footnotes omitted.) *Capital City Developers, LLC v. Bank of North Ga.*, 316 Ga. App. 624, 624-625 (730 SE2d 99) (2012).

[3] The notes provided that in the event of default, the Bank may demand "the entire unpaid principal balance under [the Note] and all accrued unpaid interest immediately due," as well as attorney fees, including the Bank's "costs of collection, including court costs and . . . 15 [percent] of the principal plus accrued interest."

On September 19, 2011, the Bank filed suit against the Myeres for non-payment of the promissory notes, seeking principal, interest, and attorney fees. The Bank subsequently filed a motion for summary judgment, relying upon the affidavit of a Bank officer. The trial court granted the motion following a hearing, entering judgment in favor of the Bank and against the Myerses (1) as to the first note: principal, interest, and attorney fees in the amount of $175,588.92, plus interest thereafter; and (2) as to the second note: principal, interest, and attorney fees in the amount of $160,274.99, plus interest thereafter. This appeal followed.

1. The Myerses argue that the trial court erred by granting summary judgment to the Bank "because the Bank failed to carry its burden of establishing the non-existence of the [Myerses'] defense that the Bank negligently failed to comply with federal regulations regarding lending policies." We disagree.

"In a suit to enforce a promissory note, it is well established that a plaintiff establishes a prima facie case by producing the note and showing that it was executed. Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant[s] can establish a defense."[4]

---

[4] (Punctuation and footnote omitted.) *Trendmark Homes, Inc. v. Bank of North Ga.*, 314 Ga. App. 886, 887 (726 SE2d 138) (2012).

Here, the Myerses allege that the Bank's undisputed failure to create and maintain written policies regarding its monitoring of current market conditions in violation of federal regulations – 12 CFR § 365.2[5] – constituted negligence.[6] According to the Myerses, they properly raised this negligence as an affirmative

[5] 12 CFR § 365.2 provides: "(a) Each insured state nonmember bank shall adopt and maintain written policies that establish appropriate limits and standards for extensions of credit that are secured by liens on or interests in real estate, or that are made for the purpose of financing permanent improvements to real estate. (b)(1) Real estate lending policies adopted pursuant to this section must: (i) Be consistent with safe and sound banking practices; (ii) Be appropriate to the size of the institution and the nature and scope of its operations; and (iii) Be reviewed and approved by the bank's board of directors at least annually. (2) The lending policies must establish: (i) Loan portfolio diversification standards; (ii) Prudent underwriting standards, including loan-to-value limits, that are clear and measurable; (iii) Loan administration procedures for the bank's real estate portfolio; and (iv) Documentation, approval, and reporting requirements to monitor compliance with the bank's real estate lending policies. (c) Each insured state nonmember bank must monitor conditions in the real estate market in its lending area to ensure that its real estate lending policies continue to be appropriate for current market conditions. (d) The real estate lending policies adopted pursuant to this section should reflect consideration of the Interagency Guidelines for Real Estate Lending Policies established by the Federal bank and thrift supervisory agencies."

[6] Specifically, the Myerses allege that "[b]ut for [the Bank's] lack of such policies, the Bank *may* have learned of the insolvency of the owners of The Currahee Club and . . . problems with the sewer systems and, as it should have done, taken them into account when determining whether to make loans to the [Myerses]." (emphasis supplied). The Meyeres do not contend that the Bank was aware of problems with the septic sanitary sewer system or of the insolvency of the subdivision at the time it issued the loans.

defense below, and the Bank's subsequent failure to meet its burden to establish the non-existence of this defense precludes summary judgment. There is no authority, however, for the Myerses' position that the violation of this federal regulation constitutes an affirmative defense.[7] Thus, the trial court did not err by rejecting this argument.

2. Although the Myereses' argument regarding liability is without merit, we agree with them that the trial court erred by entering judgment because the Bank failed to prove the amount due under the promissory notes.

In support of its summary judgment motion, the Bank relied upon the affidavit of Regis Sakalik, the Bank's credit resolution officer and senior vice president Sakalik averred that he "ha[s] knowledge of the facts set forth in [the a]ffidavit," and he stated the amounts due to the Bank on both promissory notes, including single figures for both principal and interest, plus attorney fees. Sakalik did not explain how such damages were calculated, and the only documents attached to his affidavit as exhibits were copies of the promissory notes. The Bank provided no evidence

---

[7] In fact, the only published case addressing this argument soundly rejected it. See *Intervest Mortg. Inv. Co. v. Skidmore*, 655 F.Supp.2d 1100, 1103-1104 (III) (A) (E.D. Cal. 2009) (rejecting the defendants' attempt to characterize the bank's failure to comply with 12 CFR § 365.2 as an affirmative defense to breach of contract).

regarding the amounts, if any, that the Myerses had paid towards the notes, nor did it provide a basis for the attorney fee or interest calculations.

"[W]here a party sues for damages, [it] has the burden of proof of showing the amount of loss in a manner in which the trial judge can calculate the amount of the loss with a reasonable degree of certainty."[8] The Bank

> offered no testimony or any documentation explaining its method of calculating the specific amounts sought, such as evidence of the [Myerses'] . . . payment history or evidence showing how it calculated the interest or attorney fees sought. Where, as here, we cannot be certain of the amounts due under the terms of the agreement without reference to evidence outside the pleadings, the amounts are unliquidated and must be established. . . . Because the pleadings do not contain evidence from which the trial court could confirm [the Bank's] calculations of its purported damages, we must vacate and remand.[9]

*Judgment affirmed in part and vacated in part, and case remanded. McFadden and Boggs, JJ., concur.*

---

[8] (Punctuation omitted.) *Alexander v. Wachovia Bank, Nat. Assn.*, 305 Ga. App. 641, 642 (700 SE2d 640) (2010) (quoting *Tucker Nursing Center v. Mosby*, 303 Ga. App. 80, 82 (1) (692 SE2d 727) (2010)).

[9] (Citations and punctuation omitted.) *Alexander*, 305 Ga. App. at 643 (quoting *Morgan v. Wachovia Bank, N.A.*, 237 Ga. App. 257, 258 (2) (514 SE2d 239) (1999).