**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 19, 2014**

# In the Court of Appeals of Georgia

A13A2478. L. D. F. FAMILY FARM, INC. et al. v. CHARTERBANK.

PHIPPS, Chief Judge.

Charterbank sued L. D. F. Family Farm, Inc. and Lindy Farmer, Jr., alleging that L. D. F. Family Farm had defaulted on a promissory note and Farmer had defaulted on his personal guaranty on the note. Charterbank moved for summary judgment, which the trial court granted. L. D. F. Family Farm and Farmer (collectively, "LDF") appeal from that ruling, contending that genuine issues of material fact remain regarding whether Charterbank violated its duty of good faith and fair dealing, whether the parties had mutually departed from the terms of the note, and whether "frustration of performance" excuses LDF's default. Finding no merit in LDF's claims, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

In June 2008, L. D. F. Family Farm ("Family Farm"), formerly known as L. D. F. Development, Inc., executed a promissory note to Neighborhood Community Bank ("Community Bank") in the amount of $3,104,211.33; the note was a renewal of a 2007 note. Family Farm obtained the loan to purchase and develop subdivision property, and the debt was secured by the real property. Farmer executed a personal guaranty on the note. In June 2009, Community Bank went into receivership, and later that month, Charterbank purchased the promissory note and personal guaranty.

Family Farm defaulted on the note payments and, in July 2010, entered into a forbearance agreement with Charterbank (as assignee of Community Bank). Under the forbearance agreement, LDF pertinently agreed to pay on September 8, 2011 all amounts due under the note, and Charterbank agreed to forbear exercising its default

---

[1] *Carter v. Moody*, 236 Ga. App. 262, 263 (511 SE2d 520) (1999) (citation and punctuation omitted).

remedies under the loan agreements as long as the conditions of the forbearance agreement were satisfied. But LDF failed to make the payment, and the real property that served as security for the note was subsequently foreclosed upon. In December 2011, Charterbank purchased the property at the foreclosure sale for $1,309,000. After the court confirmed the sale, Charterbank filed this suit to recover the deficiency.

In moving for summary judgment, Charterbank produced, inter alia, the promissory note and personal guaranty; Charterbank pointed to evidence that Family Farm had executed the promissory note and Farmer had executed the guaranty, that Charterbank was the lender's assignee, that LDF had defaulted on the note and guaranty, and that a balance was owed on the note after the foreclosure.

In its response, LDF conceded that it had executed the note and guaranty, and that it had failed to make payments as agreed. However, LDF contended that genuine issues of material fact remained because (1) there was evidence that Charterbank had violated the covenant of good faith and fair dealing implied in every contract; (2) the parties had mutually departed from the terms of the note; and (3) Charterbank had frustrated the purpose of the loan, thereby excusing LDF's default. To support its position, LDF submitted Farmer's affidavit, which pertinently outlined various oral

3

promises the lenders' agents had allegedly made to him from 2006 through December 2011.

On summary judgment, after the movant makes a prima facie showing of its entitlement to judgment as a matter of law, the burden then shifts to the respondent to come forward with rebuttal evidence. To do so, the respondent must set forth specific facts showing the existence of a genuine issue of disputed fact.[2]

In a suit to enforce a promissory note, a plaintiff establishes a prima facie case by producing the note and showing that it was executed.[3] "Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense."[4] Similarly, in a suit on a personal guaranty, when the signature is admitted or established, production of the instrument entitles the holder to recover on it unless the defendant establishes a defense.[5] Thus, under the

---

[2] *Myers v. First Citizens Bank & Trust Co.*, 324 Ga. App. 293, 294 (750 SE2d 378) (2013).

[3] Id. at 295 (1).

[4] Id.

[5] *Heath v. Boston Capital Corporate Tax Fund VIII*, 253 Ga. App. 537, 538 (1) (559 SE2d 743) (2002).

circumstances presented here, Charterbank established a prima facie right to a recovery, and the burden shifted to LDF to establish a valid defense.[6]

1. Regarding its defense based on the duty of good faith and fair dealing, LDF relied on Farmer's affidavit. In it, Farmer averred that LDF had needed to borrow a particular sum of money to be able to purchase and develop the land; Community Bank had led him to believe that it would loan him that amount; he was told on the day of closing that the loan would be for a smaller amount than he had requested (enough money to purchase the property, but not enough to develop it); he proceeded with closing so that he would not lose earnest money he had paid to purchase the property; LDF defaulted on the payments due to its inability to develop and sell the subdivision lots as intended; the lender assured Farmer that it would continue to "work with" LDF; and the lender subsequently refused to extend the forbearance agreement beyond its termination date, rejected a short sale of the property, and foreclosed on the property.

---

[6] See id.; *Myers*, supra.

5

Indeed, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement."[7] "But the covenant of good faith and fair dealing cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability."[8] Here, as explained below, there was no independent basis for Charterbank to be held liable.

> A promissory note is an unconditional contract whereby the maker engages that he will pay the instrument according to its tenor. It is well established that a promissory note may not be modified by the imposition of conditions not apparent on its face. The note being an unconditional promise, the contract is complete as written. Parol evidence may not be used to impose conditions which are not apparent from the face of the note. An oral agreement between the parties, made contemporaneously with the execution of the note or prior thereto relating to a condition not expressed in the note is incompetent to change the contract as represented on the face of the note.[9]

---

[7] *Hunting Aircraft v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 451 (1) (636 SE2d 139) (2006) (punctuation omitted).

[8] *McGee v. Patterson*, 323 Ga. App. 103, 112 (5) (746 SE2d 719) (2013) (citation and punctuation omitted); see *Ceasar v. Wells Fargo Bank*, 322 Ga. App. 529, 533 (2) (c) (744 SE2d 369) (2013).

[9] *Lovell v. Ga. Trust Bank*, 318 Ga. App. 860, 863 (2) (734 SE2d 847) (2012) (citation and punctuation omitted).

LDF unconditionally contracted with Charterbank's assignor to pay the note and guaranty according to the documents' terms, and Charterbank established a prima facie case for enforcement of the note and guaranty.[10] LDF could not modify the note and guaranty by imposing conditions not apparent on the faces of the agreements.[11]

> Parol evidence is inadmissible to add to, take from, or vary a written contract. In the absence of fraud, accident or mistake an unconditional promissory note cannot be changed into a conditional obligation by parol evidence. Where the terms of the contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties.[12]

Although LDF maintained that it expected or was promised the loan in a larger amount, it is undisputed that the amount of the loan was known at closing and that LDF closed anyway. And, LDF renewed the loan thereafter. "[T]he renewal of a note cuts off all defenses of which the maker then had knowledge."[13]

---

[10] See id. at 863-864 (2).

[11] Id. at 864 (2).

[12] Id. (citations and punctuation omitted).

[13] *First Bank & Trust Co. v. Young*, 202 Ga. App. 566, 567 (415 SE2d 18) (1992) (citation omitted).

LDF did not claim that the terms of the contracts were ambiguous, did not introduce evidence of fraud, accident or mistake, and nothing in the contracts required the lender to "work with" LDF before enforcing its collection rights under the note and guaranty.[14] In fact, in the forbearance agreement, LDF acknowledged that Charterbank had "the right to exercise any and all remedies available to Lender under the terms of the Loan Agreement[]," and that, in consideration of the forbearance, LDF had "no legal defenses to its obligations under the Loan Agreement[]." The purported oral representations were inconsistent with the terms of the written contracts, which required any modifications to be in writing.[15] There being no genuine issue of material fact regarding Charterbank's breach of a specific covenant, Charterbank was entitled to summary judgment.[16]

2. In its opposition to the summary judgment motion, LDF cited Farmer's affidavit to support its defense that the parties had mutually departed from the terms of the note (thus, LDF posited, Charterbank was precluded from enforcing the

---

[14] See *Lovell*, supra at 864 (2).

[15] Id. at 865 (2).

[16] See generally *Secured Realty Invs. v. Bank of North Ga.*, 314 Ga. App. 628, 630 (1) (b) (725 SE2d 336) (2012).

8

contracts without notifying LDF of its intent to return to the original terms of the contracts). Farmer averred that after LDF "fell behind" on its loan payments, an officer for Charterbank approached LDF about a forbearance agreement and stated that if LDF continued to market and maintain the property, posted a maintenance bond, and platted the plots, Charterbank would "work with" LDF on the loan, and would be willing to renew the forbearance agreement when it expired if LDF had not found a buyer for the property by that time; therefore, in good faith, LDF maintained and marketed the property as Charterbank had requested.

"[T]he conduct of the parties may be sufficient to alter the terms of an original agreement when there is evidence of a mutual, rather than unilateral, intention to depart from or disregard such terms."[17] "As a general rule, evidence of acceptance by a creditor of repeated, late, irregular payments from a debtor creates a factual question as to the formation of a quasi new agreement."[18] However, the evidence in this case shows without dispute that LDF had fallen behind on its payments and then failed to

[17] *Quintanilla v. Rathur*, 227 Ga. App. 788, 791 (2) (490 SE2d 471) (1997) (citations omitted).

[18] *Lewis v. Citizens & Southern Nat. Bank*, 174 Ga. App. 847, 848 (2) (332 SE2d 11) (1985) (citations omitted).

pay the loan on its maturity date at the end of the forbearance period.[19] Given the lack of evidence that Charterbank had agreed to nonpayment, LDF failed to show a mutual departure from the terms of the agreements.[20]

3. Finally, LDF asserted that it was excused from performance under the contracts because the principal purpose of the note (to wit, to purchase and develop a subdivision) had been frustrated - due to no fault of LDF. In his affidavit, Farmer averred that when he executed the note (on LDF's behalf) and guaranty, he had assumed that the economy would continue to prosper, and that Community Bank would hold and renew the note; but the housing market faltered, Community Bank closed, and Charterbank did not "work with" LDF as promised.

Under OCGA § 13-4-23, "[i]f the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance." "Thus, to constitute a defense to this action, [LDF's] nonperformance must have been caused by conduct of [Charterbank or its assignor] which made [its] performance useless or impossible. Nothing in this record, however,

_____

[19] See *Quintanilla*, supra at 792 (2).

[20] Id.; *Lewis*, supra.

10

raises the issue that [Charterbank or its assignor] made [LDF's] performance useless or impossible."[21]

Notably, notwithstanding Charterbanks' agent's purported oral statement to Farmer that "we may have to extend this forbearance agreement[;] [b]ut we'll address that when we get there," Charterbank was not required to extend the forbearance agreement beyond that agreement's termination date. The purported statement was not definitive,[22] and the forbearance agreement that the parties executed provided that it was "a one-time forbearance and Lender does not presently intend to forbear beyond the date set forth above." In a similar vein, a lender's refusal to make a second loan, or misrepresentations that it would make a second loan, do not bar recovery of

---

[21] *Ott v. Vineville Mkt.*, 203 Ga. App. 80 (1) (416 SE2d 362) (1992) (citation omitted).

[22] See generally *Bridges v. Reliance Trust Co.*, 205 Ga. App. 400, 402-403 (2) (422 SE2d 277) (1992) ("Unless an agreement is reached as to all terms and conditions and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect.").

the amount owed under the first loan.[23] Under the circumstances presented in this case, the trial court did not err by granting summary judgment to Charterbank.

*Judgment affirmed. Ellington, P. J., and Branch, J., concur.*

---

[23] *Bridges*, supra at 401 (1); see generally *Stedry v. Summit Nat. Bank*, 227 Ga. App. 511, 514-515 (1) (489 SE2d 862) (1997) ("Georgia's Statute of Frauds [OCGA § 13-5-30 (7)] requires a signed writing for any commitment to lend money"; this rule applies not only to promises to lend "new" money, but promises to refinance existing debts).