**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **http://www.gaappeals.us/rules/**

**October 20, 2014**

# In the Court of Appeals of Georgia

A14A1316. OWEN v. BANK OF THE OZARKS.

McFADDEN, Judge.

This appeal is from a grant of summary judgment to a bank on two promissory notes signed by appellant in favor of the bank's predecessor. Appellant's defenses are barred by the *D'Oench, Duhme* doctrine, which generally renders oral agreements between debtors and failed banks unenforceable against banking authorities and their assignees. Consequently there are no genuine issues of material fact, and we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from

it, in the light most favorable to the nonmovant.*" Wooden v. Synovus Bank*, 325 Ga. App. 876, 876-877 (756 SE2d 19) (2014) (citation omitted).

So viewed, the record shows that appellant Benjamin Carl Owen executed two promissory notes in favor of First Choice Community Bank. On April 10, 2009, he executed a note for $288,000 and on December 22, 2009, he executed a note for $513,560.97. On April 29, 2011, First Choice failed, and the FDIC was appointed as its receiver. The FDIC assigned Owen's notes to appellee Bank of the Ozarks ("the bank"), via allonges and a Purchase and Assumption Agreement.

Owen defaulted on the notes, and the bank demanded payment. After Owen failed to pay, the bank filed the instant complaint. Finding that Owen did not dispute the existence of the loans, his execution of the loan documents, and the bank's calculation of the balance due, the trial court determined that the bank had established a prima facie case as a matter of law. See *L. D. F. Family Farm, Inc. v. Charterbank*, 326 Ga. App. 361, 363 (756 SE2d 593) (2014). The court then held that Owen had not established a valid affirmative defense and granted summary judgment in favor of the bank. Owen appeals.

Owen argues that whether the parties had modified the re-payment terms of the notes was a question of fact. Specifically, he argues that First Choice had agreed that

Owen would pay interest on the loans during their terms; that Owen would pay the principal when the properties securing the loans were sold; and that First Choice would continue to renew the loans until then. As evidence of this agreement, Owen points to his own affidavit. Owen does not allege that this agreement was in writing, nor does he point to any writing in the record reflecting the agreement. He also argues that because of this oral agreement, the bank was estopped from enforcing the terms of the notes and had a duty to mitigate its damages by foreclosing on the properties securing the notes.

The trial court ruled that Owen's defenses were barred by the doctrine announced in *D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.*, 315 U.S. 447 (62 SCt 676, 86 LE 956) (1942) and by 12 USC § 1823 (e), a provision of the Financial Institutions Reform, Recovery and Enforcement Act that codified the *D'Oench, Duhme* doctrine. See *First Union Natl. Bank v. Hall*, 123 F3d 1374, 1379 n. 9 (III) (B) (11th Cir. 1997). We agree.

Under *D'Oench, Duhme*, in general, "oral agreements between debtors and failed banks will not be enforced against banking authorities" and their assignees. *Gravitt v. Bank of the Ozarks*, 326 Ga. App. 461, 464 (1) (756 SE2d 695) (2014) (citations omitted). "*D'Oench, Duhme* and its progeny enable the FDIC, and banks

3

that acquire insolvent banks' assets from the FDIC, to make quick and accurate appraisals of the value of insolvent banks' assets by protecting the FDIC and its transferees against undisclosed agreements that would unexpectedly diminish the value of those assets." *First Union*, 123 F3d at 1379 (III) (B) (footnote omitted).

Owen argues that the *D'Oench, Duhme* doctrine does not apply because in its agreement with the FDIC, the bank voluntarily accepted the modifications to the terms of the loans. He points to paragraph 2.1 (n) in the Purchase and Assumption Agreement between the FDIC and the bank. That paragraph, entitled Liabilities Assumed by Assuming Institution, provides,

> The Assuming Institution expressly assumes at Book Value (subject to adjustment pursuant to Article VIII) and agrees to pay, perform and discharge, all of the following liabilities of the Failed Bank as of the Bank Closing Date, except as otherwise provided in this Agreement (such liabilities referred to as "Liabilities Assumed"): all asset-related offensive litigation liabilities and all asset-related defensive litigation liabilities, *but only to the extent such liabilities relate to assets subject to a Shared-Loss Agreement*, and provided that all other defensive litigation and any class actions with respect to credit card business are retained by the Receiver.

(Emphasis supplied.) A Commercial Shared-Loss Agreement is attached as an exhibit to the Purchase and Assumption Agreement. But Owen does not point to any

4

evidence (or even argue) that his loans were subject to the Shared-Loss Agreement. In the absence of specific allegations or evidence that the loans are shared-loss loans, the record provides no support for his claim that Paragraph 2.1 (n) applies to except his obligation from the *D'Oench, Duhme* doctrine.

Even assuming that Owen's loans are subject to the Shared-Loss Agreement, he has not shown that he can avail himself of Paragraph 2.1 (n), because he has not shown that he is an intended beneficiary of that provision in particular or of the contracts between the FDIC and the bank in general. See *Archer W. Contrs., Ltd. v. Estate of Pitts*, 292 Ga. 219, 226-227 (2) (735 SE2d 772) (2012) (third party beneficiary can only enforce those promises made directly for his benefit). The Shared-Loss Agreement expressly provides that it

> is for the sole and exclusive benefit of the parties and their respective permitted successors and permitted assigns and there shall be no other third party beneficiaries. Nothing in this Agreement shall be construed to grant to any other Person any right, remedy or claim under or in respect of this Agreement or any provision hereof.

Owen cannot overcome the application of the longstanding *D'Oench, Duhme* doctrine by relying on contractual language which the bank and the FDIC never intended to benefit him. See *Bank of the Ozarks v. Crockett*, 2013 U.S. Dist. LEXIS 107035

(Case No. 3:13-CV-23, M.D. Ga. decided July 31, 2013); *Caires v. JPMorgan Chase Bank*, 880 FSupp2d 288, 301-302 (1) (b) (D. Conn. 2012). Given our holding that the oral agreement is not enforceable, Owen's remaining arguments have no merit.

*Judgment affirmed. Andrews, P. J., and Ray, J., concur*.